18th JUDICIAL COURT FOR THE PARISH OF WEST BATON ROUGE

STATE OF LOUISIANA

No. 44 783                                      Div. B

TARA SNEARL and AYANNA TRAN

VS.

CITY OF PORT ALLEN, MIKE CAZES, and ABC INSURANCE AGENCIES

FILED: _____                  DEPUTY CLERK: _____

## PETITION FOR DAMAGES AND OTHER RELIEF

NOW INTO COURT, through undersigned counsel, comes Plaintiffs Tara Snearl and Ayanna Tran, who state:

1. Petitioner Tara Snearl. Ms. Snearl is the surviving mother of the deceased Fatrell Queen.

2. Petitioner Ayanna Tran. Ms. Tran is the surviving daughter of the deceased Fatrell Queen. She has standing to sue for Mr. Queen's actions by operation of Civil Code 2315.1.

Made Defendants herein are:

3. City of Port Allen, as a municipality responsible for the Port Allen Police Department.

4. Mike Cazes, in his official capacity as Sheriff of West Baton Rouge Parish.

5. ABC Insurance Agencies are as-yet-unknown insurance agencies doing business in this State who provide or provided insurance that covered Defendants.

### Jurisdiction and Venue

6. Jurisdiction is proper in this Court, pursuant Louisiana Constitution Article V, § 16. Venue is proper because the events making up this lawsuit occurred in this district.

### Facts and Background

7. Fatrell Queen grew up in Port Allen, was a member of Port Allen High School Class of 2009, and worked as a warehouse package handler. He was a father to Ayanna Tran, a son to Tara Snearl, and a brother.

8. Mr. Queen lived at 818 Burbridge Street, Port Allen, LA, less than three blocks away from the West Baton Rouge Coroner's office.

9. On November 2, 2017, At approximately 5:00 a.m., neighbors of Fatrell Queen heard gunshots at Fatrell's home and called 911.

10. At approximately 5:30 a.m., officers and deputies from the Port Allen Police Department and West Baton Rouge Parish Sheriff's Office arrived at 818 Burbridge Street.

1

11.    They found Mr. Queen in a closet in his home, with four gunshot wounds. He had a gunshot wound on his eyebrow, a graze on the top of his head, a wound in his right shoulder, and a fatal wound that was downward from the head to the base of his skull.

12.    The officers call for EMS, but then canceled the call. They did not, however, contact the coroner at that time.

13.    Despite the coroner being only a few blocks away, no officer contacted his office for many hours, until approximately 11:00 a.m.

14.    This is in clear contravention to the law. R.S.13:5712(A) says that any person with "knowledge of a death under sudden, accidental, violent, or suspicious circumstances" shall "immediately notify the coroner of the death."

15.    The officers' failure to follow the law may have been related to another legal violation – the fact that Port Allen Police Department was named lead agency even though they had no officer on the force that was certified to be a homicide investigator.[1]

16.    As a result of the officers' failure to notify the coroner, Mr. Queen lost the opportunity to be an organ donor, and his autopsy was compromised. And as a result, Ms. Snearl suffered extreme emotional distress.

17.    After finding no remedy elsewhere, Petitioners have initiated this action.

## CAUSES OF ACTION

18.    Petitioner asserts the following Causes of Action, plead in the alternative where appropriate, against the Defendants.

### Count One – Negligence and Negligent Infliction of Emotional Distress

19.    Defendants' officers had a duty to timely notify the coroner upon finding Mr. Queen's body. That duty arises from R.S.13:5712(A) and from the fact that they undertook to control the scene and begin an investigation.

20.    Defendants' officers failed to timely notify the coroner.

21.    Defendants' officers' conduct was the cause in fact of the injuries suffered by Mr. Queen (his loss of opportunity to be an organ donor) and Ms. Snearl (her extreme emotional distress).

22.    This harm is within the scope of the duty that Defendants' officers breached.

---

[1] Under Louisiana law, (R.S. 40:2405.8), only officers who have completed a state homicide investigator training or received a waiver may "be assigned to lead investigations in homicide cases." According to the Peace Officer Standards and Training Council, the state agency that keeps track of homicide investigator certification, no Port Allen officer was certified to be a lead homicide investigator at the time of Mr. Queen's death.

2

23.     Defendants' officers negligent handling of Mr. Queen left the situation worse than if they had never been involved at all. Had the officers never been involved, Ms. Sneari (who was notified at 5:30 a.m. that there was a problem) could have found the body and notified the coroner herself.

### Count Two – *Respondeat Superior*

24.     While committing the misconduct alleged in the preceding paragraphs, some actors were employees and/or officers of Defendants within the scope of their employment.

25.     Defendants are therefore liable as principals for all torts committed by their agents.

### Count Three – Indemnification

26.     Louisiana law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable for actions taken in the discharge of their duties that are within the scope of their employment activities.

27.     While committing the misconduct alleged in the preceding paragraphs, some actos were employees and/or officers of Defendants within the scope of their employment.

28.     Defendants are therefore obligated by Louisiana statute to pay any judgment entered against its employees.

### Count Four – Causes of Action Against ABC Insurance Agencies

29.     Defendant ABC Insurance Companies 1-10, upon information and belief, have issued and/or currently have in effect one or more policies of insurance covering one or more of the Defendants named herein. For valuable consideration received, these policies obligated Defendant ABC Insurance Companies 1-10, jointly and/or severally, to pay on behalf of their insured Defendant(s) any sums the insured Defendant(s) may become obligated to pay to Thuy or to indemnify their insured Defendant(s) for any sums the insured Defendant(s) may become obligated to pay Thuy.

30.     By reason of their illegal and unconstitutional acts, Defendants are liable to Plaintiff for all damages and injuries Thuy has suffered as a result. Upon information and belief, Defendant ABC Insurance Companies 1-10 are contractually obligated to pay these sums on behalf of the insured Defendant(s).

31.     Upon information and belief, Defendant ABC Insurance Companies are liable to Plaintiff for any and all damages incurred by reason of the insured Defendant(s)' acts, up to their policy limits, notwithstanding the fact that the insured Defendant(s) may themselves be able to

3

Case 3:21-cv-00455-JWD-RLB   Document 1-2   08/09/21   Page 4 of 23

assert claims of privilege or immunity from liability.

    32.    Under Louisiana Revised Statute § 22:655(B), Plaintiff brings a direct action against Defendant ABC Insurance Companies 1-10 to recover any and all sums they are obligated to pay Plaintiff on behalf of their insureds or to indemnify their insureds.

## Remedies

    33.    Because of the above plead causes of action, Petitioners seek the following:

    A.  Compensatory damages;

    B.  Special damages;

    C.  Declaratory relief.

    D.  Order such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

    34.    Petitioners reserve the right to notice of defect to this pleading and reserve the right to amend or supplement this Petition after discovery of any additional fact, law, or claim, the amendment of which to be performed by the filing of any subsequent pleading.

    35.    Petitioners also state any and all other causes of action may become known through a trial of this matter on its merits against any and all other parties which are herein named or which may be added later, and request any and all other damages or remedies which this court may deem equitable.

    WHEREFORE, Petitioners pray that Defendants be served with process of this Petition for Damages and duly cited to answer same, that after all legal delays and due proceedings are complete that there be judgment in favor of Petitioners and against Defendants, jointly and *in solido* for the full amount of Petitioners' damages, plus legal interest together with all costs incurred in this matter, and any other general or equitable relief that the court deems proper.

Respectfully Submitted,

William Most, Bar No. 36914
Law Office of William Most
201 St. Charles Ave. Suite 114 #101
New Orleans, LA 70170
(504) 509-5023
williammost@gmail.com

**Please Serve:**

Sheriff Mike Cazes

City of Port Allen

4

18th JUDICIAL COURT FOR THE PARISH OF WEST BATON ROUGE

STATE OF LOUISIANA

**No. 44783**                                                                      **Div. B**

**TARA SNEARL and AYANNA QUEEN TRAN**

**VS.**

**CITY OF PORT ALLEN, MIKE CAZES, BRIANT LANDRY, TIFFENY ROBERTSON
WYCOSKIE, PORT ALLEN POLICE DEPARTMENT, WEST BATON ROUGE
SHERIFF'S OFFICE, and ABC INSURANCE AGENCIES**

**FILED: _____**                    **DEPUTY CLERK: _____**

<u>**FIRST AMENDED PETITION FOR DAMAGES AND OTHER RELIEF**</u>

**NOW INTO COURT**, through undersigned counsel, come Petitioners Tara Snearl and

Ayanna Queen Tran who state:

Petitioners desire to amend their original Petition for Damages by editing paragraph

number 1 as follows:

1.          Petitioner Tara Snearl, the mother of the deceased, Fatrell Queen, brings this suit

individually and on behalf of Ayanna Queen Tran, Fatrell Queen's minor surviving daughter.[1] In

her individual capacity, Petitioner Snearl brings this suit for <u>Intentional Infliction of Emotional</u>

<u>Distress</u>, <u>Negligent Infliction of Emotional Distress</u>, <u>Conspiracy to Commit Intentional Infliction</u>

<u>of Emotional Distress</u>, <u>Fraud</u>, and <u>Conspiracy to Commit Fraud</u>. As Ayanna Queen Tran's legal

guardian, Petitioner Snearl brings on Petitioner Queen Tran's behalf a <u>42 U.S.C.A. § 1983</u> claim

and claims for <u>Survival</u> and <u>Wrongful Death</u> based on <u>Battery</u> or <u>Negligent Killing</u>.

Petitioners desire to amend their original Petition for Damages by adding a Preliminary

Statement:

**Preliminary Statement**

In the early morning of November 2, 2017, an unknown assailant shot Fatrell Queen

("Queen") in his house. Minutes later, officers from the Port Allen Police Department ("PAPD")

and West Baton Rouge Sheriff's Office ("WBRSO") arrived. Two of these officers conducted a

---

[1] See Exhibit 1, <u>Custody Order</u>, dated January 25, 2018, signed by Judge Haney of the East Baton Rouge
Juvenile Court, placing Ayanna Queen Tran in the parental care, custody, and control of Petitioner Snearl
until further order of the Court.

"sweep" of Queen's house. Upon information and belief, during this sweep, one or both officers shot Queen a second time and killed him.

To cover up their role in Queen's death, some officers from PAPD and WBRSO immediately proceeded to perform a number of unusual actions, including the following:

- Officers claimed not to have found Queen's body during the sweep, even though (a) according to them, his body was lying in a shallow bedroom closet, surrounded by blood and bullet holes in the walls, and (b) another officer later reported that the body cameras worn by the responding officers captured images of Queen's body.

- Without explanation, officers abruptly cancelled an officer's previous request for an ambulance to the crime scene.

- Officers claimed to have finally found Queen's body in his house around 7:20 a.m., approximately two hours after the first sweep.

- Officers never notified the West Baton Rouge Coroner's Office, which is located less than three blocks from Queen's house, that Queen's body had been found. Indeed, the Coroner was not notified until 10:00 a.m., four and a half hours after Queen was killed. And this notification came not from a police officer but rather from an employee of the Port Allen Fire Department.

- Officers mysteriously towed Queen's car from Queen's garage to WBRSO without any plausible justification.

- Officers failed to appoint a qualified officer to lead the investigation into Queen's death.

- Officers selectively collected certain pieces of ballistics evidence from the crime scene while leaving behind others.

Because of Defendants' refusal to conduct a competent, good-faith investigation into Queen's death, Petitioner Snearl has had to conduct her own investigation, hire private attorneys, and reach out to several local, state, and federal officials, all in the hopes that just one of them might help her learn what the PAPD and WBRSO were, and still are, hiding. Yet all of them have refused to assist her, most of them without even bothering to explain why.

To this day, three years and seven months after Queen was killed, the PAPD have adamantly refused to give Petitioner Snearl any opportunity to review the police report, video from the responding officers' body cameras, or video from surrounding buildings' surveillance cameras. On the contrary, when they are not actively avoiding Petitioner Snearl, they simply alternate between making false promises of imminent disclosures and insisting that they are not legally bound to disclose any information to her on the grounds that the investigation they are supposedly conducting is "ongoing."  Not once have they ever explained to Petitioner Snearl or anyone else how disclosing a copy of the police report, video from the responding officers' body cameras, or video from surrounding buildings' surveillance cameras would jeopardize or impair their supposed investigation.

Because of PAPD's obvious, and thus far successful, attempt to escape legal consequences for killing Petitioner Snearl's son, Petitioner Snearl has suffered great emotional distress. Over the past three years and seven months, she has experienced high blood pressure, anxiety, depression, headaches, insomnia, weight gain, and bad dreams. For these symptoms, Petitioner Snearl has received, and continues to receive, medical and psychiatric treatment.

Petitioners desire to amend their original Petition for Damages by editing paragraph number 2 as follows:

2.    DELETED.

Petitioners desire to amend their original Petition for Damages by editing paragraph numbers 3 and 4 as follows:

Made Defendants herein are:

3.    <u>City of Port Allen</u>, as the municipality responsible for the Port Allen Police Department; <u>Briant Landry</u>, in his individual capacity and in his official capacity as an officer in the Port Allen Police Department; <u>Tiffeny Robertson Wycoskie</u>, in her individual capacity and in her official capacity as an officer in the Port Allen Police Department; and <u>Port Allen Police Department</u>, as employer or former employer of Defendants Briant Landry and Tiffeny Robertson Wycoskie. Upon information and belief, Officers Landry and Wycoskie left PAPD and joined WBRSO in 2020.

4. <u>Mike Cazes,</u> in his official capacity as Sheriff of West Baton Rouge Sheriff's Office; and <u>West Baton Rouge Sheriff's Office</u>, as employer or former employer of Defendant Mike Cazes.

5. <u>ABC Insurance Agencies</u> are as-yet-unknown insurance agencies doing business in this State who provide or provided insurance for Defendants.

**Jurisdiction and Venue**

6. Jurisdiction is proper in this Court, pursuant Louisiana Constitution Article V, § 16. Venue is proper because the events making up this lawsuit occurred in West Baton Rouge Parish.

**Facts and Background**

7. Queen grew up in Port Allen, was a member of Port Allen High School Class of 2009, and worked as a warehouse package handler. He was a father to Ayanna Queen Tran, a son to Tara Snearl, and a brother.

8. Queen lived at 818 Burbridge Street, Port Allen, LA, which was (and is still) owned by Queen's mother, Petitioner Snearl.

Petitioners desire to amend their original Petition for Damages by editing paragraph number 9 as follows:

9. On November 2, 2017, at or about 5:00 a.m., some of Queen's neighbors heard gunshots at Queen's house. Queen's girlfriend, Asia Guillard, was on the phone with Queen at the time. Guillard heard Queen scream and then silence. Guillard and at least one of Queen's neighbors called 911.

Petitioners desire to amend their original Petition for Damages by editing paragraph number 10 as follows:

10. On November 2, 2017, at or about 5:08 a.m., officers from WBRSO and PAPD, including Briant Landry and Tiffeny Robertson Wycoskie, arrived at Queen's house. Shortly after PAPD and WBRSO arrived, at least one of Queen's neighbors heard a second round of gunshots. Upon information and belief, PAPD Officers Landry and/or Wycoskie shot and killed Queen. Upon information and belief, Defendants Landry, Wycoskie, WBRSO Sheriff Mike Cazes, PAPD,

WBRSO, City of Port Allen, and other unnamed individuals have been attempting to conceal Landry's and/or Wycoskie's homicidal act since the date of Queen's death.

11.    PAPD and WBRSO officers have offered a different, deeply implausible, sequence of events. They claim that on November 2, 2017, at or about 5:19 a.m., Officers Landry and Wycoskie smelled gunpowder upon arriving at the scene, kicked in the front door of Queen's house, conducted a sweep of the house, and did not find Queen's body.  This claim is highly implausible given the following: (a) By PAPD and WRBSO officers' own account, Queen's body lay in a pool of blood in his master-bedroom closet at the time, (b) Queen's one-story house is small, measuring only 1186 square feet, (c) the master-bedroom closet was shallow and had no door, (d) blood covered the closet floor and the bedroom wall, (e) there were several bullet holes visible in the closet wall, (f) there was a bullet hole in the front door, and (g) a former law enforcement officer later informed Petitioner Snearl that footage from a body camera on one of the officers who conducted the first sweep displayed Queen's hand hanging out of the open master-bedroom closet.

On November 2, 2017, at or about 5:21 a.m., the WBRSO cancelled a call made by one of its officers to EMS.  WBRSO has never explained why the request for an ambulance was cancelled, but in retrospect the rationale is clear:  Officers wanted to prevent EMS workers from having access to Queen's body and the crime scene for fear of their learning the truth about how he died.

On November 2, 2017, at or about 5:31 a.m., PAPD Officer Kendra Wisham contacted Petitioner Snearl through Facebook Messenger.[2] Petitioner Snearl immediately drove to her son's house. When Petitioner Snearl arrived, PAPD Officer Briant Landry told her that Queen was "missing" and that his phone was "pinging" in the area. Petitioner Snearl wanted to enter her son's house, but officers would not let her. (Their refusal to let Petitioner Snearl enter Fatrell's house, which Petitioner Snearl herself owned, continued for another twenty-four hours.)  In a panic, Petitioner Snearl began walking around the neighborhood. During her walk, she was instructed to follow PAPD Officer Kendra Wisham's squad car to the local police station. Petitioner Snearl

---

[2] See Exhibit 2, Facebook Messenger Message from Kendra Wisham to Tara Snearl, dated November 2, 2017.

complied and met with PAPD Officer Wisham at the station. Wisham kept Petitioner Snearl there for several hours.

On November 2, 2017, at or about 6:30 a.m., a 911 recording indicates that, while communicating about the police response to the 911 calls, PAPD Officer Wisham whispered to a dispatcher, "Don't tell her." The dispatcher replied that Wisham should "tell her." Upon information and belief, Officer Wisham was instructing the dispatcher not to tell someone—either Petitioner Snearl or Queen's girlfriend Asia Guillard—that the police had located Queen's body.

On November 2, 2017, at or about 7:20 a.m., approximately two hours after the first sweep, WBRSO Officer Tommy Carpenter and/or WBRSO Officer Rick "Dunk" Barnett allegedly conducted a second sweep of the house and found Queen's body in the shallow master-bedroom closet.

On November 2, 2017, at or about 10:00 a.m., at least 4.5 hours after Queen was killed and approximately 2.5 hours after Queen's body was allegedly found by WBRSO officers on the second sweep of Queen's house, West Baton Rouge Chief Deputy Coroner Yancy Guerin was notified of Queen's death. The notification came not from a police officer but rather from an employee of the Port Allen Fire Department, Kevin Babin.

The 4.5-hour delay in notifying Chief Deputy Coroner Guerin of Queen's death violates La. R.S.13:5712(A), which states in relevant part that any person with "knowledge of a death under sudden, accidental, violent, or suspicious circumstances … shall immediately notify the coroner of the death" (emphasis added). Subsection (D) indicates that violation of this statute is a crime: "Any person who fails to comply with the provisions of this Section shall be guilty of a misdemeanor and upon conviction thereof shall be fined not more than five thousand dollars" (emphasis added). Upon information and belief, Chief Deputy Coroner Guerin subsequently filed a complaint with WBRSO Sheriff Mike Cazes about WBRSO officers' failure to notify his office about Queen's death, let alone do so in a timely manner, but no disciplinary action was ever taken.

On November 2, 2017, at or about 12:30 p.m., WBRSO Officer Bryan Doucet told Petitioner Snearl that Queen's body was found in the master-bedroom closet.

On November 2, 2017, at or about 2:30 p.m., Petitioner Snearl asked then-PAPD Chief Esdron Brown how his officers missed Queen's body on the first sweep. Chief Brown offered no answer to this question.

Petitioners desire to amend their original Petition for Damages by editing paragraph number 11 as follows:

12.    On June 12, 2019, a law enforcement officer went to the workplace of Petitioner Snearl's daughter, Kevaniesha Snearl, and asked her to have her mother call him. When Petitioner Snearl called this officer back, he asked her to meet him that afternoon. They met at a local restaurant. Because the officer was concerned that their conversation would be overheard, they moved to a more secluded location across the street.  During this meeting, the officer apologized to Petitioner Snearl for what happened on the day of Queen's death and offered the rationalization that police officers "need to make split-second decisions."  The implication of this remark is obvious – and was obvious at the time to Petitioner Snearl:  The responding PAPD officers, Briant Landry and/or Tiffeny Robertson Wycoskie, had shot and killed Queen.

Petitioners desire to amend their original Petition for Damages by editing paragraph number 12 as follows:

12.    On November 2, 2017, Chief Deputy Coroner Guerin informed Petitioner Snearl that Queen had been shot four times and that the fatal gunshot had been fired at close range downward through the forehead to the base of Queen's skull.

Petitioners desire to amend their original Petition for Damages by editing paragraph number 13 as follows:

13.    DELETED.

Petitioners desire to amend their original Petition for Damages by editing paragraph number 14 as follows:

14.    In addition to all of the misconduct noted in amended paragraphs 10 through 13, PAPD and WBRSO officers subsequently engaged in further actions that, put together, inexorably point to one conclusion: They were not trying to investigate Queen's homicide but rather just the

opposite—trying to suppress the homicide investigation and thereby enable PAPD Officers Landry and/or Wycoskie as well as PAPD itself to escape legal consequences for killing Queen.

First, PAPD was named as the lead agency in the investigation of Queen's death even though, at the time, PAPD did not have any officer who was qualified.[3] PAPD Officer Wisham, the officer who initially contacted Petitioner Snearl, was designated as the lead investigator but had not yet completed the required homicide investigator training.[4] WBRSO Officers Kevin Cyrus and Kenneth Young were each qualified to be lead investigator, but both refused. The fact that both police departments insisted on putting the entire investigation in the hands of unqualified personnel caused Petitioner Snearl great anxiety. She inferred that the investigation into the homicide of her son was not being, and would not be, taken seriously. Three years and seven months later, Petitioner Snearl's suspicion has been vindicated.

Second, Lacombe Wrecker Service (6937 Hwy 190, Port Allen, LA 70767) towed Queen's car from his house to WBRSO, even though the vehicle was not part of the crime scene. WBRSO Officer Ron Lejeune claimed, without any basis, that they believed a body was in the trunk. But even if this claim had not been false, it would not explain why they towed the car. On the contrary, their alleged suspicion that a body was in the trunk would make the vehicle part of the crime scene.

Third, on October 22, 2020, PAPD Officer Wycoskie, one of the two officers who conducted the first sweep of Queen's house, spoke with Jerry Summers, a private investigator who has been assisting Petitioner Snearl. Wycoskie informed Private Investigator Summers that, on the date of Queen's death, Wycoskie's husband, Brian "Deuce" Wycoskie, used his personal power tools to extract bullet casings from Queen's master-bedroom closet.

Fourth, PAPD Officer Wycoskie and the remaining officers selectively collected some, but not all, evidence from the crime scene, leaving behind significant ballistics evidence:

---

[3] Under LSA-R.S. 40:2405.8, only officers who have completed a state homicide investigator training or received a waiver may "be assigned to lead investigations in homicide cases." According to the Peace Officer Standards and Training Council, the state agency that keeps track of homicide investigator certification, no Port Allen officer was certified to be a lead homicide investigator at the time of Queen's death.

[4] On April 14, 2021, at PAPD Chief Corey Hicks' recommendation, the Port Allen Council voted 4-1 to demote Officer Wisham from Lieutenant to Corporal.

- On November 3, 2017, Queen's family found a 40 mm. casing in Queen's master-bedroom closet.

- On June 20, 2020, Private Investigator Summers found a bullet casing on a coffee table in Queen's living room.

- On June 30, 2020, Private Investigator Summers found a bullet fragment in Queen's master-bedroom closet and a bullet in the wood frame of 817 Burbridge, a house located across the street from Queen's house. Chief Brown was notified about this bullet but did not attempt to retrieve it at any time since Queen's homicide. When Private Investigator Summers asked Officer Wisham about her failure to retrieve this evidence, she responded only that she had been aware of it.

- On July 2, 2020, Private Investigator Summers found a bullet fragment in the vinyl siding at 836 Burbridge, a house adjacent to Queen's.

Fifth, on August 20, 2020, Private Investigator Summers applied Luminol spray at the crime scene to identify the locations of blood spatter from Queen's body. He ended up finding, and used video to record, that the blood spatter was more extensive and widespread in Queen's bedroom than WBRSO and PAPD had indicated, and that at least one individual had tried to clean it up. Upon information and belief, WBRSO or PAPD officers tried to scrub Queen's blood from the crime scene, including under Queen's bed, to conceal the location where Officers Landry and/or Wycoskie initially found, shot, and killed Queen.

Sixth, on April 28, 2021, Private Investigator Summers obtained, through a public records request, a copy of the Port Allen Police Department Firearms Inventory, which indicated that it had been updated as of June 17, 2020. Conspicuously missing from the two-page list were Officers Landry's and Wycoskie's weapons—weapons that, upon information and belief, were used to shoot and kill Queen on November 2, 2017. The absence or removal of these two officers' weapons from the Firearms Inventory is perfectly consistent with all the other efforts by PAPD officers to conceal what occurred at Queen's house that morning.

Petitioners desire to amend their original Petition for Damages by editing paragraph number 15 as follows:

15.    To date, three years and seven months after Queen's death, PAPD have refused to provide Petitioner Snearl any information related to this investigation. Despite numerous requests from Petitioner Snearl, PAPD has never carried through on its promises to give her a copy of the police report. Nor have they allowed her to review video from the responding officers' body cameras or surrounding buildings' surveillance cameras.

On February 26, 2021 and March 19, 2021, Petitioner Snearl met with PAPD Chief Hicks at his office to discuss the investigation. At both meetings, PAPD Chief Hicks indicated that he still had not reviewed the police report or the officers' body camera videos, and still had not discussed the case with 18th Judicial District Attorney Antonio "Tony" Clayton.

Petitioners desire to amend their original Petition for Damages by editing paragraph number 16 as follows:

16.    Queen's premature death caused, and continues to cause, Petitioner Snearl tremendous grief. But there is an additional, exacerbating cause of Petitioner Snearl's emotional distress: the fact that it was Port Allen Police officers who killed Queen, failed to render life-saving aid to him (or prevented EMS from doing so), still refuse to admit to killing Queen, and the continued attempt to conceal the fact that they killed Queen. As a result, Petitioner Snearl has experienced high blood pressure, anxiety, depression, headaches, insomnia, weight gain, and bad dreams. For these symptoms, Petitioner Snearl has received, and continues to receive, medical and psychiatric treatment.

17.    After finding no remedy elsewhere, Petitioners Snearl and Queen Tran initiated this action.

## CAUSES OF ACTION

Petitioners desire to amend their original Petition for Damages by editing paragraph number 18 as follows:

18.    Petitioner asserts the following Causes of Action, and plead in the alternative where appropriate, against the Defendants.

Petitioners desire to amend their original Petition for Damages by editing paragraph number 19 as follows:

**Survival and Wrongful Death Based on Battery or Negligent Killing**

19.    PAPD Officers Briant Landry and/or Tiffeny Robertson Wycoskie intentionally shot and killed Fatrell Queen during their first sweep of Queen's house on November 2, 2017. Defendants Briant Landry and/or Tiffeny Robertson Wycoskie are therefore liable for Battery.

In the alternative, PAPD Officers Briant Landry and/or Tiffeny Robertson Wycoskie negligently killed Queen during their first sweep of Queen's house on November 2, 2017. Defendants Briant Landry and/or Tiffeny Robertson Wycoskie are therefore liable for Negligent Killing.

Because Defendants Briant Landry and/or Tiffeny Robertson Wycoskie are liable for Battery or Negligent Killing, they are liable to Petitioner Ayanna Queen Tran, Queen's minor daughter, for Survival damages under La. C.C. Art. 2315.1(A)(1) and Wrongful Death under La. C.C. Art. 2315.2(A)(1).

**42 U.S.C.A. § 1983 Claim**

The Fifth Amendment and the Fourteenth Amendment to the United States Constitution protect every American citizen against deprivation "of life … without due process of law" by the federal and state governments. Through the application of excessive and unreasonable force against Queen at his house in the course and scope of their employment as police officers for the City of Port Allen, Defendants Briant Landry and/or Tiffeny Robertson Wycoskie violated Queen's constitutionally protected right to life and thereby violated 42 U.S.C.A. § 1983, which states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress …

Defendants Briant Landry and/or Tiffeny Robertson Wycoskie are therefore liable to Queen's daughter, Petitioner Ayanna Queen Tran, for 42 U.S.C.A. § 1983 damages.

Petitioners desire to amend their original Petition for Damages by editing paragraph number 20 as follows:

**Intentional Infliction of Emotional Distress or Negligent Infliction of Emotional Distress**

20.     By intentionally killing Fatrell Queen, PAPD Officers Briant Landry and/or Tiffeny Robertson Wycoskie caused Queen's mother, Petitioner Snearl, extreme emotional distress, including high blood pressure, anxiety, depression, headaches, insomnia, weight gain, and bad dreams. Since late 2017, Petitioner Snearl received, and continues to receive, medical and psychiatric treatment for these symptoms.  Defendants Briant Landry and/or Tiffeny Robertson Wycoskie are therefore liable to Petitioner Snearl for Intentional Infliction of Emotional Distress.

In the alternative, by negligently killing Fatrell Queen, PAPD Officers Briant Landry and/or Tiffeny Robertson Wycoskie caused Queen's mother, Petitioner Snearl, extreme emotional distress, including high blood pressure, anxiety, depression, headaches, insomnia, weight gain, and bad dreams.  Since late 2017, Petitioner Snearl received, and continues to receive, medical and psychiatric treatment for these symptoms.  Defendants Briant Landry and/or Tiffeny Robertson Wycoskie are therefore liable to Petitioner Snearl for Negligent Infliction of Emotional Distress.

Petitioners desire to amend their original Petition for Damages by editing paragraph number 21 as follows:

**Intentional Infliction of Emotional Distress**

21.     Fatrell Queen's premature death caused, and continues to cause Queen's mother, Petitioner Snearl, tremendous grief.  But there is an additional, exacerbating cause of Petitioner Snearl's emotional distress: the fact that it was Port Allen Police officers who killed Queen, failed to render life-saving aid to him (or prevented EMS from doing so), still refuse to admit to killing Queen, and the continued attempt to conceal the fact that they killed Queen.  By intentionally trying to prevent Petitioner Snearl from learning that PAPD Officers Briant Landry and/or Tiffeny Robertson Wycoskie shot and killed Queen, Defendants Landry, Wycoskie, WBRSO Sheriff Mike Cazes, Port Allen Police Department, and West Baton Rouge Sheriff's Office have intentionally caused Petitioner Snearl extreme emotional distress, including high blood pressure, anxiety, depression, headaches, insomnia, weight gain, and bad dreams. Defendants Briant Landry, Tiffeny Robertson Wycoskie, Mike Cazes, Port Allen Police Department, and West Baton Rouge Sheriff's Office are therefore liable to Petitioner Snearl for Intentional Infliction of Emotional Distress.

Petitioners desire to amend their original Petition for Damages by editing paragraph number 22 as follows:

### Conspiracy to Commit Intentional Infliction of Emotional Distress

22.    By working together to inflict severe emotional distress on Petitioner Snearl, Defendants Briant Landry, Tiffeny Robertson Wycoskie, Mike Cazes, Port Allen Police Department, and West Baton Rouge Sheriff's Office are liable to Petitioner Snearl for Conspiracy to Commit Intentional Infliction of Emotional Distress under La. C.C. Art. 2324.

Petitioners desire to amend their original Petition for Damages by editing paragraph number 23 as follows:

### Fraud

23.    La. C.C. Art. 1953 states: "Fraud is a misrepresentation, or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction." By intentionally trying to prevent Petitioner Snearl from learning that PAPD Officers Briant Landry and/or Tiffeny Robertson Wycoskie shot and killed her son, Fatrell Queen, Defendants Landry, Wycoskie, WBRSO Sheriff Mike Cazes, Port Allen Police Department, and West Baton Rouge Sheriff's Office have suppressed the truth in order to obtain an unjust advantage for themselves—specifically, avoidance of legal exposure, financial expense, and reputational damage—and are therefore liable to Petitioner Snearl for Fraud.

Petitioners desire to amend their original Petition for Damages by editing paragraph number 24 as follows:

### Conspiracy to Commit Fraud

24.    By working together to prevent Petitioner Snearl from learning that PAPD Officers Briant Landry and/or Tiffeny Robertson Wycoskie shot and killed her son, Fatrell Queen, and thereby obtaining an unjust advantage for themselves—specifically avoidance of legal exposure, financial expense, and reputational damage— Defendants Landry, Wycoskie, Mike Cazes, Port Allen Police Department, and West Baton Rouge Sheriff's Office are liable to Petitioner Snearl for Conspiracy to Commit Fraud under La. C.C. Art. 2324.

Petitioners desire to amend their original Petition for Damages by editing paragraph number 25 as follows:

**Respondeat Superior**

25.    When they committed the aforementioned torts, Defendant Mike Cazes was an employee of Defendant West Baton Rouge Sheriff's Office, and Defendants Briant Landry and Tiffeny Robertson Wycoskie were employees of Defendants City of Port Allen and Port Allen Police Department. By virtue of respondeat superior, Defendants West Baton Rouge Sheriff's Office, City of Port Allen, and Port Allen Police Department are therefore liable to Petitioner Snearl as principals for these torts.

Petitioners desire to amend their original Petition for Damages by editing paragraph numbers 26-29 as follows:

**Causes of Action Against ABC Insurance Agencies**

26.    Upon information and belief, Defendants ABC Insurance Agencies have issued one or more policies of insurance covering one or more of the Defendants named herein. For valuable consideration received, these policies obligate Defendant ABC Insurance Agencies, jointly and/or severally, to pay on behalf of their insured Defendants any sums that the insured Defendants may become obligated to pay to Petitioners Snearl and Queen Tran or to indemnify their insured Defendants for any sums the insured Defendants may become obligated to pay Petitioners Snearl and Queen Tran.

27.    By reason of their tortious acts, Defendants are liable to Petitioners Snearl and Queen Tran for all damages and injuries the latter have suffered as a result. Upon information and belief, Defendant ABC Insurance Agencies are contractually obligated to pay these sums on behalf of the insured Defendants.

28.    Upon information and belief, Defendant ABC Insurance Agencies are liable to Petitioners Snearl and Queen Tran for any and all damages incurred by reason of the insured Defendants' acts, up to their policy limits, notwithstanding the fact that the insured Defendants may themselves be able to assert claims of privilege or immunity from liability.

29.    Under Louisiana Revised Statute § 22:655(B), Petitioners Snearl and Queen Tran

bring a direct action against Defendant ABC Insurance Agencies to recover any and all sums that they are obligated to pay Petitioners Snearl and Queen Tran on behalf of their insureds or to indemnify their insureds.

Petitioners desire to amend their original Petition for Damages by editing paragraph number 30 as follows:

### Remedies

30.    Because of the above pled causes of action, Petitioners Snearl and Queen Tran seek punitive damages, compensatory damages, special damages, declaratory relief, and any such other and further relief, at law or in equity, to which they may be justly entitled.

Petitioners desire to amend their original Petition for Damages by editing paragraph number 31 as follows:

31.    Petitioners Snearl and Queen Tran reserve the right to notice of defect to this pleading and to amend or supplement this Petition after discovery of any additional fact, law, or claim, the amendment of which to be performed by the filing of any subsequent pleading.

Petitioners desire to amend their original Petition for Damages by editing paragraph number 32 as follows:

32.    Petitioners Snearl and Queen Tran state any and all other causes of action that may become known through a trial of this matter on its merits against any and all other parties which are herein named, or which may be added later, and request any and all other damages or remedies which this court may deem equitable.

Petitioners desire to amend their original Petition for Damages by editing paragraph number 33-35 as follows:

33.    DELETED

34.    DELETED

35.    DELETED

WHEREFORE Petitioners Tara Snearl and Ayanna Queen Tran pray that Defendants be served with process of this First Amended Petition for Damages and Other Relief and duly cited to answer same, that after all legal delays and due proceedings are complete that there be judgment

in favor of Petitioners Snearl and Queen Tran and against Defendants, jointly and in solido for the full amount of Petitioners Snearl's and Queen Tran's damages, plus legal interest together with all costs incurred in this matter, and any other general or equitable relief that the court deems proper.

Respectfully Submitted,

*Erin L. Pedrami*

Erin L. Pedrami, Bar No. 38369
Pedrami Law Firm, LLC
301 N. Main St., Suite 2200
Baton Rouge, LA 70801
Telephone: 225-245-9800
Fax: 225-208-1003
erin@pedramilawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has this date been sent by U.S. mail, properly addressed or electronic mail to all parties and counsel of record. Baton Rouge, Louisiana, this 2nd day of July, 2021.

*Erin L. Pedrami*

Erin L. Pedrami

**PLEASE SERVE:**
Sheriff Mike Cazes
Through his Counsel of Record:
James B. Mullaly
Usry & Weeks
1615 Poydras Street, Suite 1250
New Orleans, LA 70112
Telephone: 504-592-4600
Fax: 504-592-4641
jmullaly@usryweeks.com

**PLEASE SERVE:**
City of Port Allen
Through its Counsel of Record:
David W. Marcase
700 North 10th Street, Suite 440
Baton Rouge, LA 70802
Telephone: 225-332-7631
Fax: 225-336-5277
dmarcase@lma.org

**PLEASE SERVE:**
Officer Briant Landry
At his place of employment:
West Baton Rouge Sheriff's Office
850 8th Street
Port Allen, LA 70767

**PLEASE SERVE:**
Officer Tiffeny Robertson Wycoskie
At her place of employment:
West Baton Rouge Sheriff's Office
850 8th Street
Port Allen, LA 70767

**PLEASE SERVE:**
Port Allen Police Department
375 Court Street
Port Allen, LA 70767

**PLEASE SERVE:**
West Baton Rouge Sheriff's Office
850 8th Street
Port Allen, LA 70767

18th JUDICIAL COURT FOR THE PARISH OF WEST BATON ROUGE

STATE OF LOUISIANA

No. 44783                                                    Div. B

TARA SNEARL and AYANNA TRAN

VS.

CITY OF PORT ALLEN, MIKE CAZES, BRIANT LANDRY, TIFFANY ROBERTSON
WYCOSKIE, PORT ALLEN POLICE DEPARTMENT, WEST BATON ROUGE
SHERIFF'S OFFICE, and ABC INSURANCE AGENCIES

FILED: _____          DEPUTY CLERK: _____

<u>AFFIDAVIT OF VERIFICATION</u>

STATE OF LOUISIANA

PARISH OF EAST BATON ROUGE

   BEFORE ME, the undersigned Notary Public, duly commissioned and qualified in and

for the aforesaid State and Parish, on the date mentioned below, personally came and appeared:

      TARA SNEARL

the Petitioner in the above-captioned matter and a person of the full age of majority domiciled in

the Parish of West Baton Rouge, State of Louisiana, who after being duly sworn, did depose and

state:

   She has read the above-captioned <u>First Amended Petition for Damages and Other Relief</u>,

and all of the allegations of fact contained therein are true and correct, to the best of her knowledge,

information, and belief.

_____
     TARA SNEARL

   SWORN TO AND SUBSCRIBED, before me, undersigned Notary Public, this 2nd

day of July, 2021.

_____
     NOTARY PUBLIC
    Erin L. Pedrami, Bar Roll #38369
     My Commission is for Life

STATE OF LOUISIANA

IN THE INTEREST OF

AYANNA TRAN  DOB:06/20/2015

JUVENILE NUMBER 110227

JUVENILE COURT – DIVISION A

PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

## CUSTODY ORDER

The Court, having considered the evidence and the best interest of the child, ordered the following:

IT IS ORDERED, ADJUDGED AND DECREED that Ayanna Tran be placed in the care, custody and control of her paternal grandmother, Tara Q. Snearl, who resides at 226 Montrachet Drive, Port Allen, Louisiana 70767, until further order of this Court.

THUS ORDERED, SIGNED AND FILED in the Juvenile Court on this 25th day of January, 2018.

_____
ADAM J. HANEY
THE JUVENILE COURT

CERTIFIED TRUE AND
CORRECT COPY

JAN 25 2018

East Baton Rouge Parish
Deputy Clerk of Court

EXHIBIT
1

FILED

JAN 25 2018

DEPUTY CLERK OF COURT

▪▪▪ Verizon  LTE            **9:26 PM**            ⁂ ▪◼ ▸

‹ Home (5)        Kendra Wisham ›        📞  📹
                      Messenger



# Kendra Wisham

## 132 mutual friends including Lacey W Henderson and Kevaniesha Snearl

You added Kendra on November 2, 2017

🕑 Missed Call                    11/02/2017, 5:31 AM

You missed a call from Kendra.

Call Back

### Tara call me <u>225-436-2496</u>

    ### It's very important

You accepted Kendra's request.

1 Missed Call View

