# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**TARA SNEARL, ET AL.**

**CIVIL ACTION**

**v.**

**NO.  21-455 –JWD-RLB**

**CITY OF PORT ALLEN, ET AL.**

## RULING AND ORDER

This matter comes before the Court on *Rule 12(c) Motion for Judgement on the Pleadings or, Alternatively, Rule 12(e) Motion for a More Definite Statement* (Doc. 14) filed by Defendants Mike Cazes, Sheriff of West Baton Rouge Parish ("Sheriff" or "Cazes" or "Defendant") and West Baton Rouge Parish Sheriff's Office ("WBRSO").  Plaintiffs Tara Snearl ("Snearl") and Ayanna Queen Tran ("Tran") (collectively "Plaintiffs") oppose the motion. (Doc. 24.)  Cazes has filed a reply. (Doc. 26.)  Oral argument is not necessary.  The Court has carefully considered the law, facts in the record, and arguments and submissions of the parties and is prepared to rule.

This suit involves the alleged killing of Plaintiffs' son and father by police officers and the alleged conspiracy by various local law enforcement agencies to cover up that egregious act. It must be said at the outset that the Court sympathizes with the Plaintiffs for their loss. The allegations put forth by Plaintiffs are serious and, if true, constitute a grave injustice to both Plaintiffs and the community at large.

However, this Court remains bound to apply the law to the facts and claims as alleged in the operative petition.  Having carefully considered both, the Court finds that that Plaintiffs have failed to state viable claims against these particular Defendants.

But, the Court notes that other defendants remain pending in this case (many of whom have filed motions to dismiss), and the instant ruling does not assess the validity of those claims.

1

The Court also notes that, given the procedural posture of this case, and because Plaintiffs may be able to amend their complaint to cure the deficiencies outlined in this ruling, the Court will grant Plaintiffs leave to amend so that they may again attempt to assert viable claims.

## I.    Relevant Factual Background

Plaintiffs allege that on November 2, 2017, an unknown person shot Fatrell Queen ("Queen"), son of Plaintiff Tara Snearl and father of Plaintiff Ayanna Queen Tran, in his home. (*Amended Petition*, Doc. 1-2 at 1.) Soon afterward, officers from the Port Allen Police Department ("PAPD"), including Briant Landry and Tiffeny Robertson Wycoskie, along with deputies from WBRSO, arrived on the scene. (*Id.* ¶ 10, at 4.) According to the operative complaint, one or both of those PAPD officers shot Queen a second time, thereby killing him. (*Id.*) Plaintiffs contend that Cazes and WBRSO have been attempting to cover up the alleged actions of the officers that night. (*Id.* at 4-5.)

Based on these alleged facts, Snearl brings claims against, *inter alia*, Cazes and WBRSO for Fraud, Conspiracy to Commit Fraud, Intentional Infliction of Emotional Distress ("IIED"), and Conspiracy to Commit IIED. (*Id.*, ¶ 1, at 1.) Plaintiffs also assert *respondeat superior* claims against WBRSO based on the alleged torts of Cazes. (*Id.*, ¶ 25, at 14.)

Additionally, Plaintiffs bring claims of Negligent Infliction of Emotional Distress ("NIED") against PAPD officers Briant Landry and/or Tiffeny Robertson Wycoskie. (*Amended Petition*, Doc. 1-2, ¶ 20, at 12.) On behalf of Tran, Snearl brings § 1983 claims for "Survival and Wrongful Death based on Battery or Negligent Killing." (*See id.* ¶ 1, at 1; *see also id.* ¶ 19, at 11.) These claims will be discussed briefly *infra* as they relate to the claims against Cazes.

## II.    Rule 12(c) Standard

Rule 12(c) provides that, after the pleadings are closed but early enough not to delay trial, a party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). A Rule 12(c) motion is "designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (per curiam) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1367, at 509–10 (1990)).

The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6). *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 (5th Cir. 2002)).  With respect to these motions, the Supreme Court has explained, "Federal pleading rules call for a 'short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 346–47 (2014).

Interpreting Rule 8(a), the Fifth Circuit has explained:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) (emphasis added in *Lormand* ).

Applying the above case law, the Western District of Louisiana has stated:

> Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ]; *Twombly*, [550] U.S. at 556, 127 S.Ct. at 1965. This analysis is not substantively different from that set forth in *Lormand, supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. The standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257; *Twombly*, [550] U.S. at 556, 127 S.Ct. at 1965.

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.*, 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011) (citation omitted).

Thus, "[i]t is axiomatic, as it is for motions under Rule 12(b)(6) and as evidenced by countless judicial opinions . . . , that for purposes of the court's consideration of the Rule 12(c) motion, all of the well pleaded factual allegations in the adversary's pleadings are assumed to be true and all contravening assertions in the movant's pleadings are taken to be false." 5C A. Benjamin Spencer, *Federal Practice & Procedure (Wright & Miller)* § 1368 (3d ed. 2021). "Thus, in effect, the party opposing the motion has the benefit of all possible favorable assumptions." *Id.*; *see also Thompson v. City of Waco*, 764 F.3d 500, 502 (5th Cir. 2014) (stating that, in deciding a

4

Rule 12(b)(6) motion, all well-pleaded facts are taken as true and viewed in the light most favorable to the plaintiff).

### III.    Discussion of Claims Against WBRSO

WBRSO moves to dismiss all claims against it, including the *respondeat superior* claim. (Doc. 14-1 at 10.) Plaintiffs concede in their opposition that the WBRSO "is not an entity that can be sued under Louisiana law." (Doc. 24 at 5.) Plaintiffs further assert in their opposition that "all claims against [WBRSO] are withdrawn and replaced with the very same claims against Sheriff Cazes in his official capacity." *Id.*

It should be noted that Plaintiffs cannot amend their complaint in an opposition. *See Roebuck v. Dothan Sec., Inc.*, 515 F. App'x 275, 280 (5th Cir. 2013) ("When deciding a Rule 12(b)(6) motion to dismiss, the district court is limited to the allegations set forth in the complaint." (citing, *inter alia*, *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) (explaining that "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss")).  However, this point is moot because Plaintiffs have already asserted these same claims against Cazes (except for the *respondeat superior* claims). (*See Amended Petition*, Doc. 1-2, ¶ 21-25 at 12-14.)

Thus, given Plaintiffs' concession, all claims against WBRSO, including the *respondeat superior* claims, are dismissed as waived. The Court will proceed with the claims against Cazes.

**IV.    Discussion of Claims Against Cazes**

**A.  *Fraud and Conspiracy to Commit Fraud Claims***

*1. Parties' Arguments[1]*

Regarding the fraud and conspiracy to commit fraud claims, Defendant first argues that Plaintiffs have failed to allege the who, what, when, where, why, and how required by Federal Rule of Civil Procedure 9(b) (hereinafter "Rule 9(b)") for fraud claims. (Doc. 14-1 at 5-7.) Defendant characterizes Plaintiffs' assertions as "vague and conclusory" and thus assert that Plaintiffs' fraud claim should be dismissed (*Id.* at 6-7.) Moreover, Defendant argues that there is no conspiracy to commit fraud claim independent of the underlying fraud claim, so the conspiracy to commit fraud claim necessarily fails as well. (*Id.* n. 14, at 7.)

Plaintiffs' opposition responds: (1) that Rule 9(b) is not applicable in suits against a sheriff in his official capacity, (Doc. 24 at 3 (citing *Causey v. Par. of Tangipahoa*, 167 F. Supp. 2d 898, 905 (E.D. La. 2001); *Anderson v. Pasadena Independent School Dist.*, 184 F.3d 439 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996)), and (2) that, even if Rule 9(b) did apply, Plaintiffs have adequately pled fraud and conspiracy to commit fraud, as these claims can be inferred from the facts and newspaper articles surrounding the events. (*Id.* at 4.) Moreover, Plaintiffs claim because there are strong inferences of fraud and because the facts necessary to provide further details of the alleged fraud are peculiarly within the knowledge or control of Defendant, the "requirements of particularity [should] be relaxed." (*Id.*) Plaintiffs also note that they intend to assert individual claims against Cazes in a Second Amended Complaint. (*See* Doc. 24 at 3 n.4.)

---

[1] For clarity, the Court will analyze the parties' arguments claim by claim, beginning with the fraud and conspiracy to commit fraud claims.

In reply, Cazes argues that Plaintiffs have misapplied the caselaw concerning Rule 9(b)'s application to defendants sued in their official capacity. (Doc. 26 at 3.) Cazes contends that Plaintiffs have sued him in his official capacity under state law claims and that "[t]his designation does not trigger any law or nuances arising under 42 U.S.C. § 1983 and, as such, Plaintiffs' allegation that the 'heightened pleading requirement' does not apply to the Sheriff is meritless." (*Id.*)

### 2. Analysis

#### a. Application of Rule 9(b) to Cazes in His Official Capacity

Plaintiffs rely on caselaw from the Fifth Circuit and the Eastern District of Louisiana for the proposition that the heightened pleading requirements of Rule 9(b) do not apply to sheriffs sued in their official capacity. (*See* Doc. 24 at 3 (citing *Causey*, 167 F. Supp. 2d at 905 (E.D. La. 2001); *Anderson*, 184 F.3d 439; *Baker*, 75 F.3d at 195).   For example, in *Causey*, the Court analyzed claims against a parish sheriff and police chief under the liberal pleading requirements of Rule 8(a). *See Causey*, 167 F. Supp. 2d at 905. The court relied on the Supreme Court's holding in *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993), and the Fifth Circuit's application of the Court's holding. *See Causey*, 167 F. Supp. 2d at 905 (citing *Anderson*, 184 F.3d 439; *Baker*, 75 F.3d at 195).

However, the instant case is distinguishable from those cited by Plaintiffs. All of the aforementioned cases involved federal law, specifically § 1983 claims. In federal claims, "official-capacity lawsuits are typically an alternative means of pleading an action against the governmental entity involved" and thus, "no heightened pleading is required in actions against individual defendants in their official capacities[.]" *Anderson*, 184 F.3d at 443 (citing *Baker*, 75 F.3d at 195).

Here, however, Plaintiffs are asserting state law fraud claims against Cazes. Plaintiffs

have not cited any applicable authority to support their contention that this exception applies to

state law claims. In fact, Fifth Circuit caselaw has stated that Rule 9(b) does apply to state law

fraud claims. *See Musket Corp. v. Suncor Energy (U.S.A.) Mktg., Inc.*, 759 F. App'x. 280, 289

(5th Cir. 2019) ("State law fraud claims are subject to the heightened pleading requirements

of Rule 9(b).") (citations omitted). Thus, Rule 9(b)'s heightened pleading requirements apply to

Plaintiffs' fraud claims against Cazes in his official capacity as Sheriff of West Baton Rouge

Parish.

b.  Adequacy of Plaintiffs' Fraud Claims Against Cazes

"Generally, a plaintiff's complaint will survive a Federal Rule of Civil Procedure 12(b)(6)

[or Rule 12(c)] motion to dismiss if the complaint plausibly states a claim for relief, assuming its

factual allegations are true." *Turner v. Ascendium Educ. Grp.*, No. 20-660, 2021 WL 5510232, at

*6 (M.D. La. Nov. 24, 2021) (deGravelles, J.) (quoting *Trinity Med. Servs., L.L.C. v. Merge

Healthcare Sols., Inc.*, No. 17-592, 2018 WL 3748399, at *5 (M.D. La. Aug. 7, 2018)

(deGravelles, J.) (citing *Local 731 I.B. of T. Excavators and Pavers Pension Trust Fund v.

Diodes, Inc.*, 810 F.3d 951, 956 (5th Cir. 2016) (citing *Ashcroft*, 556 U.S. at 678)). "However,

when the complaint involves a fraud allegation, [Rule] 9(b) requires a higher pleading

standard." *Id.* Specifically, this pleading standard requires the plaintiff to "state with particularity

the circumstances constituting fraud." *Id.* (citing Fed. R. Civ. P. 9(b)).

"The Fifth Circuit has interpreted [Rule] 9(b) strictly, requiring the plaintiff to specify the

statements contended to be fraudulent, identify the speaker, state when and where the statements

were made, and explain why the statements were fraudulent." *Id.* (quoting *Flaherty & Crumrine

Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009)) (cleaned up). "In

short, plaintiffs must plead enough facts to illustrate 'the who, what, when, where, why and how' of the alleged fraud." *Schott, Tr. for Est. of InforMD, LLC v. Massengale*, No. 18-759, 2019 WL 4741811, at *12 (M.D. La. Sept. 27, 2019) (deGravelles, J.) (quoting *Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005)).

Fraud is defined under Louisiana law as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." La. Civ. Code art. 1953. "Fraud may also result from silence or inaction." *Id.*

Plaintiffs' allegations concerning the fraud claims against Cazes are as follows:

- "Upon information and belief, Defendants Landry, Wycoskie, WBRSO Sheriff Mike Cazes, PAPD, WBRSO, City of Port Allen and other unnamed individuals have been attempting to conceal Landry's and/or Wycoskie's homicidal act since the date of Queen's death." (*Amended Petition*, Doc. 1-2, ¶ 10, at 4-5.)

- "Upon information and belief, Chief Deputy Coroner Guerin subsequently filed a complaint with WBRSO Sheriff Mike Cazes about WBRSO officers' failure to notify his office about Queen's death, let alone do so in a timely manner, but no disciplinary action was ever taken." (*Id.* ¶ 11, at 6.)

- "By intentionally trying to prevent Petitioner Snearl from learning that PAPD Officers Briant Landry and/or Tiffeny Robertson Wycoskie shot and killed her son, Fatrell Queen, Defendants Landry, Wycoskie, WBRSO Sheriff Mike Cazes, Port Allen Police Department, and West Baton Rouge Sheriff's Office have suppressed the truth in order to obtain an unjust advantage for themselves—specifically, avoidance of legal exposure, financial expense, and reputational damage—and are therefore liable to Petitioner Snearl for Fraud." (*Id.* ¶ 23, at 13.)

- "By working together to prevent Petitioner Snearl from learning that PAPD Officers Briant Landry and/or Tiffeny Robertson Wycoskie shot and killed her son, Fatrell Queen, and thereby obtaining an unjust advantage for themselves—specifically avoidance of legal exposure, financial expense, and reputational damage—Defendants Landry, Wycoskie, Mike Cazes, Port Allen Police Department, and West Baton Rouge Sheriff's Office are liable to Petitioner Snearl for Conspiracy to Commit Fraud under La. C.C. art. 2324." (*Id.* ¶ 24, at 13.)

Considering these allegations, the Court finds that Plaintiffs' amended petition fails to meet the heightened pleading standard imposed by Rule 9(b). Beyond mere conclusions, Plaintiffs provide no allegations showing that Cazes defrauded Plaintiffs or personally covered up or conspired to cover up the murder of Queen. In their amended petition, Plaintiffs do not specify *when* or *where* any claimed misrepresentations occurred. Plaintiffs also do not explain *how* Defendant Cazes has attempted to "conceal Landry's and/or Wycoskie's [alleged] homicidal act since the date of Queen's death" or *how* Cazes allegedly "suppressed the truth[.]" Further, Plaintiffs do not specify *when* or *where* Defendant "intentionally tr[ied] to prevent [Snearl]" from learning of the circumstances of her son's death. Plaintiffs mention WBRSO officers' failure to notify the coroner, but they do not describe *how* this failure was part of the supposed cover-up. Thus, Plaintiffs have failed to plead with the required particularity to satisfy Rule 9(b).

Plaintiffs also argue that the "requirements of particularity [should] be relaxed" because of the strong inferences of fraud and because the facts necessary to provide further details of the alleged fraud are peculiarly within the knowledge or control of Defendant, (Doc. 24 at 4), but Plaintiffs fail to support their contention with allegations from the operative complaint. Here, in their opposition, Plaintiffs cite a Southern District of Texas case to support their argument and put forth the following as to what they consider to be "strong inferences" of fraud:

> the entire cover-up—that is, (a) PAPD's and WBRSO's many misrepresentations to Ms. Snearl about what happened to Queen on November 2, 2017, and (b) their "suppression of truth" – for example, their failure to conduct a good-faith investigation into Queen's death and their refusal to allow Ms. Snearl access to the police report, video from the responding officers' body cameras, and video from surrounding buildings' surveillance cameras.

*Id.*

But, in their *Amended Petition*, Plaintiffs never allege, beyond conclusions, what facts are necessary to their fraud claim and are in the exclusive knowledge or control of Cazes.  The only reference to the withholding of body camera footage, surveillance, and police reports in this pleading relates to the *PAPD,* not Cazes. (*Amended Petition*, Doc. 1-2, at 2-3) ("To this day, three years and seven months after Queen was killed, *the PAPD have adamantly refused* to give Petitioner Snearl any opportunity to review the police report, video from the responding officers' body cameras, or video from surrounding buildings' surveillance cameras.") (emphasis added). For Cazes, Plaintiffs only argue in their opposition that "Sheriff Cazes has had both constructive knowledge and actual knowledge of the cover-up by his own police department as well as by the PAPD. What's more, Sheriff Cazes has also had the power to end the cover-up – that is, to order a proper investigation into Queen's death." (Doc. 24 at 4.)

This is critical because "[i]t is not sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones." *United States ex rel. Wuestenhoefer v. Jefferson*, 105 F. Supp. 3d 641, 672 (N.D. Miss. 2015) (quoting *Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009)). In essence, Plaintiffs are leaving the Court to put flesh on the bones of their skeletal argument. This, the Court will not do.

Plaintiffs also rely on "the extensive news coverage of Queen's homicide" and argue that this news coverage "has provided all the notice Sheriff Cazes needed to 'prepare a responsive pleading.' " (Doc. 24 at 4.) Cazes contends that the Court should not take judicial notice of the articles. (Doc. 26 at 5-6.)

This Court and other courts have previously taken judicial notice of newspaper articles to demonstrate the fact of coverage. *See e.g.*, *Mealey v. Gautreaux*, No. 16-716, 2020 WL 515853, at *23 (M.D. La. Jan. 31, 2020) (deGravelles, J.) (taking judicial notice of newspaper articles);

*see also Washington Post v. Robinson*, 935 F.2d 282, 291 (D.C. Cir. 1991) (permitting judicial

notice of the existence of newspaper articles); *Jackson v. Godwin*, 400 F.2d 529, 536 (5th Cir.

1968) (finding that newspapers and magazines allowed inside a prison gave extensive coverage

of riots and the district court could take judicial notice of such coverage).

However, even if the Court were to consider these articles, Plaintiffs would still not

satisfy the pleading requirements of Rule 9(b). Neither of the first two articles cited by Plaintiffs

mention Cazes or WBRSO, nor do they mention anything about a cover up of Queen's murder or

any allegations that law enforcement officers were responsible for Queen's murder. *See* Youssef

Rddad, *After 3 years since Port Allen man's death, family pushes for answers as case goes cold*,

THE ADVOCATE (Nov. 30, 2020, 9:00 AM),

https://www.theadvocate.com/baton_rouge/news/communities/westside/article_aaa11ab4-2e83-

11eb-9dff-c77e32809142.html; *see also* Breanna Smith, *Private investigator says new evidence*

*could bring justice for Fatrell Queen*, THE WEST SIDE JOURNAL (Oct. 28, 2020, updated Nov. 7,

2020), https://www.thewestsidejournal.com/news/private-investigator-says-new-evidence-could-

bring-justice-for-fatrell-queen/article_a795fc40-193e-11eb-859d-834a9f0f4703.html. The last

news article cited by Plaintiffs concerns the murder of a Port Allen community activist and is

similarly irrelevant to the case at hand. *See* Youssef Rddad, *Hours after criticizing city leaders*

*about unsolved murder, Port Allen activist found fatally shot*, THE ADVOCATE (Nov. 14, 2019,

11:42 AM, updated Nov. 14, 2019, 6:59 PM),

https://www.theadvocate.com/baton_rouge/news/communities/westside/article_4dbb40b8-06fc-

11ea-942f-f3e6bc472201.html. Like the others, this article does not mention a cover up or Cazes.

*See id.* Further, the only mention of WBRSO concerns its investigation of the deceased

community activist for potential voter fraud. *See id.* Thus, even if the Court were to take judicial

notice of the cited news articles, the articles would not aid Plaintiffs in meeting the pleading requirements of Rule 9(b).

"In sum, Plaintiff has not sufficiently plead enough facts to show the 'who, what, when, where, why and how' of the alleged fraud, as is required by the Fifth Circuit's strict interpretation of Rule 9(b)." *Turner*, 2021 WL 5510232 at *7 (quoting *Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)). Thus, because Plaintiffs have failed to allege fraud with the requisite particularity, the fraud claim against Cazes must be dismissed.

### c.   Conspiracy to Commit Fraud

As noted by Defendant (*see* Doc. 14-1, fn. 14, at 7), this Court has stated that "under Louisiana law, conspiracy to commit fraud is not an independent cause of action but depends on the underlying fraud." *Schott*, 2019 WL 4741811, at *1 (deGravelles, J.). Thus, because Plaintiffs have failed to adequately plead the claim for the underlying fraud, the Court will also dismiss the conspiracy to commit fraud claim against Cazes.

### B.  Intentional Infliction of Emotional Distress

#### 1. Parties' Arguments

Defendant argues that Plaintiffs' IIED claims arise directly from the allegations of fraud against him and that, since Plaintiffs have failed to adequately plead the fraud claims, the IIED claims must necessarily fail as well. (Doc. 14-1 at 9.) Defendant further contends that Rule 9(b) applies here as well because the fraud and IIED claims are "so intertwined." *Id.*

For this issue, Plaintiffs refer the Court to their opposition to the Rule 12(c) motion filed by defendants City of Port Allen, former Officer Briant Landry, and former Officer Tiffeny

Robertson Wycoskie. *See* (Doc. 24 at 5) ("All of Sheriff Cazes' arguments are taken word-for-word from Municipal Defendants' Motion for Judgment on the Pleadings. They fail for the same reasons set forth in Plaintiffs' Opposition to that Motion."). In that opposition, Plaintiffs assert that "a police cover-up can give rise to an IIED claim." (Doc. 25 at 10 (citing *Kammeyer v. City of Sharonville*, 311 F. Supp. 2d 653, 665 (S.D. Ohio 2003), *abrogated by Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690 (6th Cir. 2006)). Moreover, Plaintiffs further maintain (1) that Rule 9(b) does not apply to official capacity claims; (2) that Rule 9(b) does not apply to IIED claims that are not based on fraud; and (3) that even if the Court were to analyze the IIED claims under Rule 9(b), they meet Rule 9(b)'s heightened pleading requirements. (Doc. 25 at 11.)

Defendant responds that Plaintiffs "have not refuted the arguments presented in Defendant's original Motion to Dismiss." (Doc. 26 at 7.) Defendant also reiterates the Rule 9(b) arguments discussed above, (*see supra*, part IV.A.1), and claims that Plaintiffs have provided the Court with no factual basis to sustain the IIED claims against Cazes. (Doc. 26 at 7-8.)

### 2. Applicable Law

The Louisiana Supreme Court recognized the tort of IIED in *White v. Monsanto Co.*, 585 So. 2d 1205 (La. 1991). There, the court stated that, in order to recover for IIED, a plaintiff must establish "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *Id.* at 1209. Further, "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.*

14

"The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position . . . which gives him . . . [the] power to affect [Plaintiffs'] interests." *Id.* at 1209-10 (citing Restatement (Second) of Torts § 46 cmt. e).

### 3. Analysis

#### a.  Application of Rule 9(b)

The first issue is whether Rule 9(b)'s particularity requirements apply to Plaintiffs' IIED claims.  As previously discussed, Plaintiffs cited caselaw purporting to hold that Rule 9(b) does not apply to sheriffs sued in their official capacity, but the Court found those cases distinguishable because they apply to federal § 1983 claims, not to state law claims as are asserted here. *See supra*, part IV.A.2.a. Likewise, Defendant cites caselaw from the Northern District of Texas for the proposition that Rule 9(b) should also apply to Plaintiffs' IIED claims. (*See* Doc.14-1 at 9) ("When both fraud and non-fraud claims are alleged, Rule 9(b) pleading requirements sometimes apply to both, but compliance with rule 9(b) is required only when the non-fraud claims are 'so intertwined' with the fraud averments that it is not possible to describe a simple redaction to separate the two.") (quoting *Kennard v. Indianapolis Life Ins. Co.*, 420 F. Supp. 2d 601, 609 (N.D. Tx. 2006)). Defendant also cites to *Nazareth Intl., Inc. v. J.C. Penney Corp., Inc.,* 2005 WL 1704793 at *3-4 (N.D. Tx. July 19, 2005) for this proposition.

These cases relied on the Fifth Circuit's decisions in *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719 (5th Cir. 2003), *Williams v. WMX Techs.,* 112 F.3d 175 (5th Cir. 1997), and *Shushany v. Allwaste, Inc.,* 992 F.2d 517 (5th Cir. 1993), which applied Rule 9(b) to cases of negligent misrepresentation. However, the Fifth Circuit made clear in *Am. Realty Tr., Inc.*, that Rule 9(b) should not generally be applicable in determining whether a non-fraud claim is viable. 115 F. App'x. 662,668 (5th Cir. 2004). The court distinguished but did not overrule

*Williams* and *Shushany* and instructed that Rule 9(b) should not ordinarily apply to non-fraud

claims:

> In their brief, plaintiffs properly distinguished between their fraud and negligent misrepresentation claims and correctly argued that the Rule 9(b) requirement of particularized pleading of fraud by its terms does not apply to negligent misrepresentation claims. [Defendant] argues to the contrary and mistakenly relies on [*Williams,* 112 F.3d at 177] and [*Shushany.,* 992 F.2d at 520 n. 5]. Those cases are inapposite for two reasons. First, the plaintiffs in those cases failed to distinguish their negligent misrepresentation claims in their appellate briefs and argue them separately from their fraud claims, thus waiving the argument that their negligent misrepresentation claims should not have been dismissed because they were not subject to Rule 9(b) and its particularized pleading requirement. *See Williams,* 112 F.3d at 177 (indicating that the parties "do not attempt to distinguish [the fraud and negligent misrepresentation claims] in their briefs"); *Shushany,* 992 F.2d at 520 n. 5 (noting that the appellant did not attempt to distinguish the claims in his brief and that issues not briefed are waived). *Benchmark Electronics v. J.M. Huber Corp.,* 343 F.3d 719, 723 (5th Cir.2003), decided after briefing in this case was completed, is also not applicable because in *Benchmark* the appellant failed to distinguish between its fraud claims and negligent misrepresentation claims on appeal. *See Benchmark,* 343 F.3d at 723. Second, this court in *Williams,* 112 F.3d at 177, and *Shushany,* 992 F.2d at 520 n. 5, did not purport to amend Rule 9(b). Congress has empowered the Supreme Court to issue general rules of procedure binding on the District Courts. 28 U.S.C. § 2072(a). This court has no authority to amend the rules established by the Supreme Court. 28 U.S.C. § 2071.

*Id.* at 669, n.30. Thus, in addressing whether Rule 9(b) or Rule 8(a) applies, the Court must

determine whether Plaintiffs have "properly distinguished" between their fraud and IIED claims.

Before 2019, there was some ambiguity in the Fifth Circuit's caselaw regarding what

exactly is pertinent in determining whether claims have been "properly distinguished."

*Shushany* seems to suggest that the inquiry should focus on both whether the claims are based on

the same set of facts and whether the plaintiff briefed the claims separately. *See Shushany*, 992

F.2d at, 520 n. 5 ("We assume that the same Rule 9(b) concerns apply to the common law fraud

claims as to the securities fraud claims. The complaint *relies on the same allegations for them*. In any event, Shushany made no attempt to *distinguish the claims in his brief*.") (emphasis added). *Williams* suggests the same. *See Williams*, 112 F.3d at 177 ("Because [Plaintiffs] do not attempt to distinguish these claims in their brief, *and* because the state law claims rely upon the same misrepresentations as the federal claims, we do not distinguish between them here. *See Shushany*. . . .") (emphasis added). However, *Benchmark* suggests that the issue turns on whether the claims are based on the same set of facts. *See Benchmark*, 343 F.3d at 723 ("Although Rule 9(b) by its terms does not apply to negligent misrepresentation claims, this court has applied the heightened pleading requirements when the parties have not urged a separate focus on the negligent misrepresentation claims. [*Williams*, 112 F.3d at 177]. That is the case here, as Benchmark's fraud and negligent misrepresentation claims *are based on the same set of alleged facts.*") (emphasis added).  But *Am. Realty Tr., Inc.* in distinguishing the aforementioned cases, seems to suggest that what is pertinent is whether the plaintiffs argued that Rule 9(b) should not be applied. *See Am. Realty Tr., Inc*, 115 Fed. App'x at 669, n. 30 ("In their brief, plaintiffs properly distinguished between their fraud and negligent misrepresentation claims and correctly argued that the Rule 9(b) requirement of particularized pleading of fraud by its terms does not apply to negligent misrepresentation claims. . . . [P]laintiffs in [*Williams* and *Shushany*] failed to distinguish their negligent misrepresentation claims in their appellate briefs and argue them separately from their fraud claims, thus waiving the argument that their negligent misrepresentation claims should not have been dismissed because they were not subject to Rule 9(b) and its particularized pleading requirement.").

However, recently, in *Matter of Life Partners Holdings, Inc.*, 926 F.3d 103 (5th Cir. 2019), the Fifth Circuit provided clarity by stating that the proper inquiry is whether the claims rely on the same set of alleged facts:

> Because [Plaintiff] has identified a separate focus on its negligent misrepresentation claims, Rule 9(b) does not apply here. In *Williams*, the fraud and negligent misrepresentation claims relied on the same misrepresentations, 112 F.3d at 177, and in *Benchmark*, they were "based on the same set of alleged facts." 343 F.3d at 723. Here, however, [Plaintiff's] negligent misrepresentation claim relies on a different set of misrepresentations—the offering materials—than its fraudulent transfer claims, which rely on the *commissions* paid to the Licensees as the operative fraudulent conduct. The two claims also rely on different sets of underlying facts: for the fraudulent transfer claims, the relevant facts are the payment of commissions to the Licensees; for the negligent misrepresentation claim, the relevant facts are the distribution of the LP offering materials to investors. Count 10 is thus subject only to Rule 8(a). *See Am. Realty Tr., Inc. v. Hamilton Lane Advisors, Inc.*, 115 F. App'x 662, 668 & n.30 (5th Cir. 2004) (distinguishing *Williams* and *Benchmark* and finding that "plaintiffs' negligent misrepresentation claims are only subject to the liberal pleading requirements of Rule 8(a)").

*Id.* at 123.

Here, Plaintiffs did not properly distinguish between their fraud and IIED claims. While the Plaintiffs did separately argue their IIED claims, (*see* Doc. 25 at 10-11) (discussing separately their IIED claims), and argued that Rule 9(b) should not apply, (*see id.*), their IIED and fraud claims rely on the same alleged facts. The assertions regarding fraud include:

> By intentionally trying to prevent Petitioner Snearl from learning that PAPD Officers Briant Landry and/or Tiffeny Robertson Wycoskie shot and killed her son, Fatrell Queen, Defendants Landry, Wycoskie, WBRSO Sheriff Mike Cazes, Port Allen Police Department, and West Baton Rouge Sheriff's Office have suppressed the truth in order to obtain an unjust advantage for themselves—specifically, avoidance of legal exposure, financial expense, and reputational damage—and are therefore liable to Petitioner Snearl for fraud.

18

(*Amended Petition*, Doc. 1-2, ¶ 23, at 13.) Similarly, the allegations concerning IIED state:

> By intentionally trying to prevent Petitioner Snearl from learning that PAPD Officers Briant Landry and/or Tiffeny Robertson Wycoskie shot and killed Queen, Defendants Landry, Wycoskie, WBRSO Sheriff Mike Cazes, Port Allen Police Department, and West Baton Rouge Sheriff's Office have intentionally caused Petitioner Snearl extreme emotional distress, including high blood pressure, anxiety, depression, headaches, insomnia, weight gain, and bad dreams. Defendants Briant Landry, Tiffeny Robertson Wycoskie, Mike Cazes, Port Allen Police Department, and West Baton Rouge Sheriff's Office are therefore liable to Petitioner Snearl for Intentional Infliction of Emotional Distress.

(*Id.* ¶ 21, at 12.)

Thus, unlike *Matter of Life Partners Holdings, Inc.*, and like *Williams* and *Benchmark*, Plaintiffs rely on essentially the same set of alleged facts for both claims. Specifically, Plaintiffs allege that Cazes' participation in a cover up makes him liable for fraud. Plaintiffs then allege that due to his participation in the same cover up, he is liable to Plaintiffs for IIED. That is, these causes of actions are based on the same set of alleged facts, so Rule 9(b) will apply to Plaintiffs' IIED claims as well.

Further, though the Fifth Circuit discusses this principle in terms of negligent misrepresentation, the Court finds that the same is true regarding IIED. Both are state law tort claims, and it logically follows that this rule should extend here to IIED claims because of their "entwinement." Though Rule 9(b) should ordinarily "be construed narrowly," case law and treatises recognize that "asserting claims premised on fraudulent conduct can trigger the obligation to plead with particularity," even beyond claims of traditional fraud. 5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1297 (4th ed. 2021); *see e.g., Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643 (9th Cir. 2019) ("[B]ecause plaintiffs rely on a 'unified course of fraudulent conduct' as the basis of the constructive fraud claim, the claim is at a minimum

'grounded in fraud' and therefore 'must satisfy the particularity requirement of Rule 9(b).' ");

*Bynane v. Bank of N.Y. Mellon for CWMBS*, 866 F.3d 351, 360–61 (5th Cir. 2017) ("stating that

an allegation of a forged signature must meet the pleading requirements of Rule 9(b)"); *Gibson v.*

*Credit Suisse AG*, 787 F. Supp. 2d 1123, 1135-1136 (D. Idaho 2011) ("holding that a negligence

claim was subject to Rule 9(b) because all other claims were grounded in fraudulent conduct and

the negligence section of complaint did nothing but incorporate allegations of other sections").

Thus, it is evident from Fifth Circuit precedent and caselaw from other jurisdictions that

claims grounded in fraud may lead to the triggering of Rule 9(b)'s heightened pleading

standards. That is the case here, as Plaintiffs' allegations of fraud are essentially identical to

those of their IIED claims. In sum, the Court finds that Plaintiffs' IIED claims are subject to Rule

9(b)'s particularity requirements.

b. Adequacy of Plaintiffs' IIED Claims

i. *Waiver*

Plaintiffs' response in their opposition regarding the IIED claims borders on waiver, and

the Court could dismiss the claims based on waiver alone. "To avoid waiver, a party must

identify relevant legal standards and 'any relevant Fifth Circuit cases.' " *JTB Tools & Oilfield*

*Servs., L.L.C. v. United States*, 831 F.3d 597, 601 (5th Cir. 2016) (holding that, because appellant

"fail[ed] to do either with regard to its underlying claims, ... those claims [were] inadequately

briefed and therefore waived." (citing *United States v. Skilling*, 554 F.3d 529, 568 n.63 (5th Cir.

2009) and *United States v. Scroggins*, 599 F.3d 433, 446–47 (5th Cir. 2010) (noting that it is "not

enough to merely mention or allude to a legal theory)). "Issues adverted to in a perfunctory

manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not

sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones." *Wuestenhoefer*, 105 F. Supp. 3d at 672.

Here, Plaintiffs have largely failed to substantively respond to Defendant's arguments concerning the sufficiency of the IIED claims in their opposition. Instead, Plaintiffs refer the Court to their opposition to a motion filed by separate defendants. *See* (Doc. 24 at 5) ("All of Sheriff Cazes' arguments are taken word-for-word from Municipal Defendants' Motion for Judgment on the Pleadings. They fail for the same reasons set forth in Plaintiffs' Opposition to that Motion."). In that opposition, Plaintiffs assert that "a police cover-up can give rise to an IIED claim." (Doc. 25 at 10 (citing *Kammeyer*, 311 F. Supp. 2d at 665).) Plaintiffs cite one overruled Ohio district court decision that is interpreting Ohio state law for this proposition.

Further, Plaintiffs provide the Court with no caselaw or developed argument as to why Rule 9(b) should not apply or, if it does apply, how Plaintiffs have sufficiently met it. Plaintiffs only argue, ". . . Rule 9(b) does not apply to the IIED claims which are not based on fraud; and even if the Court were to review these claims under Rule 9(b), they would survive because each allegation identified the speaker/actor, the statement/act, and the date of occurrence – at least where such information is ascertainable without discovery." (Doc. 25 at 11.) *Cf. Turner*, 2021 WL 5510232 at *4 ("Plaintiff haphazardly states that he is not required to satisfy the heightened pleading standard of Rule 9(b) when stating a LUTPA claim based on allegations of fraud or deceit, but he provides no substantive law—or attempted reasoning, for that matter—to support that conclusion."). Indeed, Plaintiffs never mention Cazes in their arguments that they have sufficiently pled IIED.

Thus, given Plaintiffs' skeletal and barebones arguments, the Court could dismiss Plaintiffs' IIED claims on the basis of waiver. *See JTB Tools & Oilfield Servs.,* 831 F.3d at 601;

(holding that, because appellant "fail[ed] to do either [(that is, "identify relevant legal standards and 'any relevant Fifth Circuit cases')] with regard to its underlying claims, ... those claims [were] inadequately briefed and therefore waived." *Wuestenhoefer*, 105 F. Supp. 3d at 672 ("This failure to develop the relevant argument effectively represents a waiver of the point."). However, since the Court will grant the Plaintiffs leave to amend, the Court declines to dismiss on these grounds.

*ii.    Substantive Grounds for Dismissal*

Putting aside the issue of waiver, the Court finds substantive grounds to dismiss the IIED claims. In short, these claims fail for substantially the same reasons as their fraud claims fail. *See discussion of fraud claims, supra*, part IV.A.2.b.

Plaintiffs specifically allege that the IIED claim is premised upon the actions of Cazes in the alleged cover-up. (*Amended Petition*, Doc. 1-2, ¶ 21, at 12.) Plaintiffs have not sufficiently alleged, beyond conclusions, the essential elements of an IIED claim, *i.e.*, that Cazes engaged in extreme and outrageous conduct, or that Cazes intended to inflict severe emotional distress on Plaintiff, or that Cazes knew that severe emotional distress would be certain or "substantially certain" to result from the conduct. *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 514 (5th Cir. 1994), *citing White*, 585 So.2d at 1209. Plaintiffs have alleged no facts beyond conclusions to show that the Sheriff personally engaged in any intentional acts directed at the Plaintiffs, much less the "what, when, where, and how" required under Rule 9(b).

Since Plaintiffs have not met their burden under Rule 9(b) to sufficiently allege fraud, they similarly cannot meet their burden under Rule 9(b) to sufficiently plead IIED based on the same underlying fraudulent conduct. Thus, Plaintiffs' IIED claim will also be dismissed.

### iii.    *Conspiracy to Commit IIED*

Similarly, Plaintiffs have failed to adequately plead Conspiracy to Commit IIED.

Plaintiffs allege:

> By working together to inflict severe emotional distress on Petitioner Snearl, Defendants Briant Landry, Tiffeny Robertson Wycoskie, Mike Cazes, Port Allen Police Department, and West Baton Rouge Sheriff's Office are liable to Petitioner Snearl for Conspiracy to Commit Intentional Infliction of Emotional Distress under La. C.C. Art. 2324.

(*Amended Petition*, Doc. 1-2, ¶ 22, at 13.) Plaintiffs fail to allege how or when the defendants "work[ed] together to inflict severe emotional distress on Petitioner Snearl." Thus, they have again failed to plead their Conspiracy to Commit IIED claim with sufficient particularity, and it will be dismissed as well.

### C.  *Negligent Infliction of Emotional Distress*

Plaintiffs only bring NIED claims against Officers Briant Landry and/or Tiffeny Robertson Wyocoskie. (*Id.* ¶ 20, at 12.) However, in their leave to amend, Plaintiffs may be able to assert NIED claims against Cazes.  *See Adams v. United Ass'n of Journeyman & Apprentices of the Plumbing & Pipefitting Indus. of the United States & Canada, AFL-CIO, Local 198*, No. 98-400, 2022 WL 266687, at *3 (M.D. La. Jan. 27, 2022) (deGravelles, J.).  Since these claims are not asserted, the Court need not assess the sufficiency of same at this time.

### D.  *§ 1983 Claims*

Plaintiffs state in their opposition, "[a]s with the Municipal Defendants' motion, the WBRSO motion for judgment on the pleadings says nothing about the Section 1983 . . . claims. Accordingly, challenges to the viability of these allegations should be deemed waived." (Doc. 24, n. 1 at 1 (citing Fed. R. Civ. Pro 12(h)).

However, the Court agrees with Defendant that Plaintiffs have not pled any § 1983 claims against Cazes. Plaintiffs' *Amended Petition* reveals that Plaintiffs only assert § 1983 claims against Defendants Briant Landry and/or Tiffeny Robertson Wycoskie. (*Amended Petition*, Doc. 1-2, ¶ 19, at 11.) Thus, Cazes has not waived any argument against any § 1983 claims. He simply did not respond because no § 1983 claims had been asserted against him.

Since Plaintiff has not asserted a § 1983 claim against the Sherriff, the Court will not address whether such a claim would be viable.  Such a claim may be viable, *see Skinner v. Ard*, 519 F. Supp. 3d 301 (M.D. La. 2021) (deGravelles, J.) (describing relevant standards for § 1983 claims against Sheriffs), though the Court declines to make any definitive ruling on this issue.

### E.  Respondeat Superior

#### 1. *Parties' Arguments*

The parties' arguments are somewhat convoluted on the issue of *respondeat superior.* Plaintiffs assert in their brief that "all claims against [WBRSO] are withdrawn and replaced with the very same claims against Sheriff Cazes in his official capacity." (Doc. 24 at 5.) Plaintiffs also state in their opposition, "[a]s with the Municipal Defendants' motion, the WBRSO motion for judgment on the pleadings says nothing about the . . . Respondeat Superior claims. Accordingly, challenges to the viability of these allegations should be deemed waived." (Doc. 24, n. 1 at 1 (citing Fed. R. Civ. Pro 12(h)).

However, Defendants' motion did take note of the *respondeat superior* claims. It sought dismissal of them. Defendants further argue in their reply brief that Plaintiffs cannot modify their pleading by replacing the *respondeat superior* claims in an opposition. (Doc. 26 at 8.) Moreover, Defendants argue that Cazes cannot be held liable under *respondeat superior* for his own torts. *Id.*

*2. Analysis*

There is some ambiguity in the briefs as to whether the proper defendant against whom to assert these *respondeat superior* claims is Sheriff Cazes or the WBRSO itself.  However, ultimately, this issue need not be resolved at this time.  Because Cazes cannot be liable under *respondeat superior* for his own torts, *see* La. Civ. Code art. 2320 ("Masters and employers are answerable for the *damage occasioned by their servants* . . . in the exercise of the functions in which they are employed. . . . The master is answerable for the offenses and *quasi-offenses committed by his servants*. . . .") (emphasis added), and because there is no other party in the case affiliated with Cazes or WBRSO, any *respondeat superior* claim must be dismissed.  *See* 12 William E. Crawford, *Louisiana Civil Law Treatise (Tort Law)* § 9:11 (2d ed. 2019) ("It goes without saying that if the employee was not guilty of tortious conduct in the alleged wrong, [then] there is no vicarious responsibility on the employer.").  The Court simply notes in closing that, should Plaintiffs amend their complaint on this claim, they should resolve the issue of whom the claim should be asserted against.

## F.  *Leave to Amend*

"[A] court ordinarily should not dismiss the complaint except after affording every opportunity to the plaintiff to state a claim upon which relief might be granted." *JMCB, LLC v. Bd. of Commerce & Indus.*, 336 F. Supp. 3d 620, 641 (M.D. La. 2018) (deGravelles, J.) (quoting *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1955)). Moreover, the Fifth Circuit has stated:

> In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

Further:

> As the numerous case[s] ... make clear, dismissal under Rule 12(b)(6) generally is not immediately final or on the merits because the district court normally will give the plaintiff leave to file an amended complaint to see if the shortcomings of the original document can be corrected. The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that the plaintiff be given every opportunity to cure a formal defect in the pleading. This is true even when the district judge doubts that the plaintiff will be able to overcome the shortcomings in the initial pleading. Thus, the cases make it clear that leave to amend the complaint should be refused only if it appears to a certainty that the plaintiff cannot state a claim.
>
> A district court's refusal to allow leave to amend is reviewed for abuse of discretion by the court of appeals. A wise judicial practice (and one that is commonly followed) would be to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the district court will be able to determine conclusively on the face of a defective pleading whether the plaintiff actually can state a claim for relief.

*JMCB*, 336 F. Supp. 3d at 642 (quoting 5B Charles A. Wright, Arthur R. Miller, *et al., Federal Practice and Procedure* § 1357 (3d ed. 2016)).

While Plaintiffs have amended their petition, they have not done so in response to a ruling by this Court assessing the viability of their claims. Accordingly, the Court will act according to the "wise judicial practice" and grant leave to amend. *See Watkins v. Gautreaux*, 515 F. Supp. 3d 500, 519 (M.D. La.2021*) (deGravelles, J.) (citing *inter alia Fetty v. Louisiana State Bd. of Private Sec. Examiners*, No. 18-517, 2020 WL 520026, at *15 (M.D. La. Jan. 31, 2020) (deGravelles, J.) ("because Plaintiffs did not amend their complaint in response to a ruling by this Court, and because of the above 'wise judicial practice,' the Court will grant Plaintiffs one final opportunity to amend their complaint to state viable claims against the [Defendants].")

In closing, the Court reminds Plaintiffs' counsel of his obligations under Rule 11. Plaintiffs must have a good faith basis in law or fact for asserting any claims. Further, as explained above, some of Plaintiffs' positions were untenable and, in a couple of instances, could have been deemed a waiver. Plaintiffs' counsel is advised to prepare appropriately before filing any amended pleading.

## V.    Conclusion

Accordingly,

**IT IS ORDERED** that the *Rule 12(c) Motion for Judgement on the Pleadings or, Alternatively, Rule 12(e) Motion for a More Definite Statement* (Doc. 14) filed by Defendants Mike Cazes, Sheriff of West Baton Rouge Parish and West Baton Rouge Parish Sheriff's Office is **GRANTED**, and all claims by Plaintiffs asserted against these defendants are **DISMISSED WITHOUT PREJUDICE.**

**IT IS FURTHER ORDERED** that Plaintiffs are hereby given twenty-eight (28) days from the day the Court renders a ruling on the other pending motions to dismiss in this case, (Docs. 15 and 16), in which to amend the operative petition to assert viable claims. Failure to do so will result in the dismissal of their claims with prejudice.

Signed in Baton Rouge, Louisiana, on <u>March 15, 2022</u>.


_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**