UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **TARA SNEARL, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-455-JWD-RLB** |
| **CITY OF PORT ALLEN, ET AL.** | |

## ORDER

Before the Court is Sheriff Jeff Bergeron's Motion to Quash. (R. Doc. 98). The motion is opposed. (R. Doc. 99). Sheriff Bergeron filed a Reply. (R. Doc. 102).

Having considered the arguments of the parties, the Court will set an evidentiary hearing on **December 11, 2024.** The parties shall be prepared to address the following issues: (1) whether federal common law or state law determines the existence and scope of the asserted privilege, and (2) whether, under the applicable factors, the asserted privilege applies to the documents sought by Plaintiffs' subpoena.

**I.   Background**

Tara Snearl and A.T. (collectively, "Plaintiffs"), the mother and minor daughter of the deceased Fartrell Queen ("Queen"), bring this wrongful death action against Officer Briant Landry ("Landry"), Officer Tifffeny Wycoskie ("Wycoskie"), and the City of Port Allen pursuant to 42 U.S.C. § 1983 and state law. (*See* R. Doc. 1-1; R. Doc. 68).

In the operative Second Amended Complaint, Plaintiffs allege that on November 2, 2017, gunshots were heard at Queen's house at 5:00 a.m., and then, after calls were made to 911, Landry and Wycoskie, two former officers of the Port Allen Police Department ("PAPD"), as well as unidentified officers of the West Baton Rouge Sheriff's Office ("WBRSO"), arrived at Queen's home. (R. Doc. 68 at 3). Plaintiffs allege, among other things, that Landry then "shot and killed Queen," and the "Defendants Landry, Wycoskie, the City of Port Allen, and other unnamed individuals have been attempting to conceal Defendant Landry's homicidal act since

the date of Queen's death." (R. Doc. 68 at 3). In support of a claim of spoliation of evidence, Plaintiffs alleges that "Defendant Landry intentionally caused part of his bodycam video to be destroyed or otherwise made unavailable to Plaintiffs for the purpose of concealing his firing of the 'kill shot' into Queen's head" and "subsequently sold the weapon he used to fire the kill shot to prevent a match between the weapon and the bullet and/or cartridge case." (R. Doc. 68 at 13-14).

After completing an in camera review of documents and information sought from the City of Port Allen, the Court ordered the production of Landry and Wycoskie's bodycam video from the date of the incident and ballistic reports concerning the incident (redacted to remove the names of any witnesses and suspects) for review by Plaintiffs' former counsel and then by Plaintiffs. (R. Docs. 47, 48). After viewing the videos, Plaintiffs' former counsel sought to withdraw as counsel. (R. Doc. 49). Plaintiffs then obtained new counsel, who have not viewed Landry and Wycoskie's bodycam video.

On June 27, 2024, the parties filed a Joint Motion to Stay Proceedings. (R. Doc. 90). The district judge granted the motion, staying the action and administratively closing the case. (R. Doc. 92).

On August 6, 2024, Plaintiffs filed an unopposed motion to lift the stay, and reopen the case, for the limited purpose of serving a subpoena on WBRSO. (R. Doc. 94). The district judge granted the motion and lifted the stay for this limited purpose. (R. Doc. 97).

On August 27, 2024, Plaintiffs served the Rule 45 subpoena at issue on the WBRSO, seeking the following documents and information:

> 1. all police reports, investigation reports, and internal affair reports relating to the subject matter of this litigation;
>
> 2. all dispatch calls to and from the Port Allen Police Department (PAPD) on November 2, 2017;

>3. all 911 calls relating to the subject matter of this litigation;
>
>4. all radio and telephone communications between Bryant Landry ("Landry") and PAPD and Tiffany Robertson Wycoskie ("Wycoskie") and PAPD from November 2, 2017, relating to the subject matter of this litigation;
>
>5. all reports of Landry firing his police-issued weapons prior to November 2, 2017;
>
>6. all written, audio-recorded, and video-recorded witness statements relating to the subject matter of this litigation;
>
>7. any and all bodycam video from any and all officers on the scene at Queen's house on November 2, 2017;
>
>8. a list of all PAPD and WBRSO personnel on scene at Queen's house on November 2, 2017;
>
>9. all building-surveillance video obtained in the course of any investigation of the incident conducted by or on behalf of PAPD, WBRSO, and/or 18th Judicial District Attorney Tony Clayton;
>
>10. any and all bullet casings obtained from the crime scene, including not only Queen's house but also Queen's neighbors' houses;
>
>11. any and all logs indicating the chain of custody for these bullet casings; and
>
>12. the contents of the many text messages and voicemails stored in Queen's phone in the days and hours leading up to and following his death.

(R. Doc. 98-3). The subpoena sought compliance by September 12, 2024.

On September 10, 2024, Sherriff Jeff Bergeron, Sheriff of West Barton Rouge Parish, filed the instant Motion to Quash the subpoena. (R. Doc. 98). In support of the motion, Sheriff Bergeron first asserts the following:

>As a preliminary matter, Mover submits that he does not possess the following items: (1) all radio and *telephone* communications between Briant Landry ("Landry") and PAPD and Tiffany Robertson Wycoskie ("Wycoskie") and PAPD from November 2, 2017, relating to the subject matter of this litigation; (2) all reports of Landry firing his police-issued weapons prior to November 2, 2017; and (3) a list of all PAPD and WBRSO personnel on scene at Queen's house on November 2, 2017. While WBRSO personnel do have copies of bodycam videos, those videos were taken from devices belonging to Port Allen Police Officers, as WBRSO personnel are not equipped with body cameras. In other words, only the Port Allen Defendants can state, with certainty, whether any body camera footage

>   other than the footage previously viewed by Ms. Snearl exists. Plaintiff's request that she be provided with "*any and all bullet casings obtained from the crime scene*" must also be addressed and designated for what it is: unrealistic. Mover cannot hand over and consequently contaminate direct evidence taken from what is believed to be the firearm used to murder Mr. Queen in support of Plaintiffs' pursuit for monetary damages. The bullet casings' chain of custody and the integrity of that evidence must be preserved for the purpose of any future prosecution.

(R. Doc. 98-1 at 3). Plaintiffs do not directly address these assertions in opposing the Motion to Quash.

Sheriff Bergeron further argues that all other documents in "the criminal investigation file" sought by the subpoena are not subject to disclosure in light of the protections provided in Louisiana's Public Record Act, which provides, in pertinent part, the following:

>   A. Nothing in this Chapter shall be construed to require disclosures of records, or the information contained therein, held by the offices of the attorney general, district attorneys, sheriffs, police departments, Department of Public Safety and Corrections, marshals, investigators, public health investigators, correctional agencies, communications districts, intelligence agencies, Council on Peace Officer Standards and Training, Louisiana Commission on Law Enforcement and Administration of Criminal Justice, or publicly owned water districts of the state, which records are:
>
>>      (1) Records pertaining to pending criminal litigation or **any criminal litigation which can be reasonably anticipated**, until such litigation has been finally adjudicated or otherwise settled, **except as otherwise provided in Subsection F of this Section**.

La. R.S. 44:3(A)(1) (emphasis added). In turn, Section F provides that "after a period of ten years has lapsed from the date of death of a person by other than natural causes," immediate family members of the deceased may obtain access to the otherwise protected records. *See* La. R.S. 44:3(F).

In support of a finding that criminal litigation "can be reasonably anticipated" with respect to Queen's death, Sheriff Bergeron submits the declaration of Kenneth Young ("Young"). (R. Doc. 98-4). Young, a criminal investigator with WBRSO, states that he is personally involved in an "ongoing" criminal investigation into the death of Queen being jointly

4

conducted by the WBRSO and PAPD, with the PAPD serving as the "primary investigating agency" into Queen's death. (R. Doc. 98-4 at 1). Young further states that "[d]isclosure of the criminal investigation file into Mr. Queen's death could prove harmful to [the] investigatory efforts, as key information that is not publicly known could potentially be disclosed, thereby jeopardizing not only the criminal investigation into this matter, but any potential criminal prosecution brought by the State of Louisiana against Mr. Queen's killer." (R. Doc. 98-4 at 1-2).

In opposition, Plaintiffs argue, among other things, that the protections from public disclosure detailed in La. R.S. 44:3(A)(1) do not apply in this case because Sheriff Bergeron has not established that the there is an active, ongoing, and good-faith homicide investigation, notwithstanding the assertions in Young's declaration. (R. Doc. 99).

In reply, Sheriff Bergeron argues that the Young's declaration establishes that there is "reasonably anticipated criminal litigation" notwithstanding Plaintiff's "skepticism" regarding the investigation, and, therefore, the investigative records are protected from disclosure until ten years have elapsed from Queen's death. (R. Doc 102).

## II. Issues for Resolution at the Evidentiary Hearing

### A. Whether Federal Common Law or Louisiana Law Applies

This action was removed on the basis that the Court can exercise federal question jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff has raised claims for damages that arise under the federal civil rights statute, 42 U.S.C. § 1983. (R. Doc. 1; *see* R. Docs. 1-1, R. Doc. 68).

Rule 501 of the Federal Rules of Evidence provides the following:

> The common law--as interpreted by United States courts in the light of reason and experience--governs a claim of privilege unless any of the following provides otherwise:
>
> • the United States Constitution;
> • a federal statute; or

5

> • rules prescribed by the Supreme Court.
>
> But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

Fed. R. Evid. 501; *see Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991) ("When considering a federal claim, federal courts apply federal common law, rather than state law, to determine the existence and scope of a privilege."). "In cases involving federal and state claims, when the requested evidence relates to both the state and federal claims and the privilege rules conflict, courts have generally applied federal privilege law." *Porter v. Dauthier*, No. 14-41-JWD-RLB, 2014 WL 6674468, at *3 (M.D. La. Nov. 25, 2014) (noting the law is unsettled with respect to the application of federal or state law privilege where supplemental state-law claims are also present in federal question cases).

Here, Plaintiffs raise both federal claims and state law claims in the Second Amended Complaint. (*See* R. Doc. 68). Given the foregoing, counsel for the parties should be prepared to argue before the Court whether, and to what extent, the Court should apply federal common law, which "recognizes a qualified privilege protecting investigative files in an ongoing criminal investigation," or the "similar privilege" found in La. R.S. 44:3(A)(1). *See Coughlin*, 946 F.2d at 1159; *see also Day v. CHSV Fairway View, LLC*, No. 21-465-JWD-RLB, 2022 WL 4239061, at *3 (M.D. La. Sept. 14, 2022) (in applying state law, concluding that the Court need not determine whether La. R.S. 44:3(A)(1) strictly provides a "privilege against subpoenas issued to law enforcement agencies in civil proceedings" because it was "sufficient for the Court to find that the discovery sought is a 'protected matter' under the statute and relevant jurisprudence.").

**B.    Whether a Criminal Investigation is "Ongoing" or "Reasonably Anticipated"**

When faced with a similar motion to quash, one federal court in this Circuit concluded that it would reach the same result under either federal common law or Louisiana statutory law.

6

*See Chastant v. Prudential Ins. Co. of Am.*, No. 11-626, 2011 WL 4007863, at *2 (W.D. La. Sept. 8, 2011) (applying La. R.S. 44:3 in diversity action, but considering applicable factors with respect to the federal common law privilege); *see also Coughlin*, 946 F.2d at 1159-60 ("Louisiana law creates a similar privilege" to the federal common law "qualified privilege protecting investigative files in an ongoing criminal investigation ").

With respect to federal common law, the Fifth Circuit has directed courts to consider the ten factors articulated in [*Frankenhauser v. Rizzo*, 59 F.R.D. 338, 344 (E.D. Pa. 1973)] in balancing the government's interest in confidentiality against the litigant's need for the documents." *Coughlin*, 946 F.2d at 1160. The *Frankenhauser* test for determining whether to apply the federal common law "law enforcement privilege" requires weighing the following ten factors:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; (10) the importance of the information sought to the plaintiff's case.

*In re U.S. Dep't of Homeland Sec.*, 459 F.3d 565, 570 (5th Cir. 2006) (citations omitted). "Like other circuits using the law enforcement moniker, the purpose of the [law enforcement] privilege in the Fifth Circuit is to protect from release documents relating to an ongoing criminal investigation." *Id.*, 459 F.3d at 569 n.2.

With respect to the protection provided in La. R.S. 44:3(A)(1), the Louisiana Supreme Court has set forth a similar multifactor test for determining whether criminal litigation is "reasonably anticipated" and, therefore, protected from production under state law:

> [T]he determination of whether criminal litigation is reasonably anticipated within the meaning of La. R.S. 44:3 must be made on a case-by-case basis in the context of a contradictory hearing wherein the opportunity to present evidence and cross-examine witnesses is present. The determination must rest on more than an assertion by the prosecutorial authority that criminal litigation is or is not reasonably anticipated. Were the determination based solely on the testimony of the prosecutor, inconsistencies and caprice could enter the determination of whether the Public Records Act requires disclosure of the records at issue. The prosecutorial authority could change its mind, a new prosecutorial administration could enter office, new evidence could be discovered, a witness could come forward, or an absconded defendant could be found. The determination of whether criminal litigation is reasonably anticipated is subject to factors both within the prosecutorial authority's discretion and outside of its control.
>
> We therefore find that a court's determination of whether criminal litigation is reasonably anticipated pursuant to La. R.S. 44:3(A)(1) must be guided by objective factors. These factors must serve the dual purpose of protecting the public's right to know and safeguarding a prosecutorial authority's ability to preserve the integrity of an investigatory file when criminal prosecution is reasonably anticipated, which is the purpose of the limited exemption provided by the statute at issue. The determination should take into account, among other things the court finds relevant: [1] whether criminal litigation may still be initiated given the prescriptive period of the offense to be charged; [2] the temporal and procedural posture of each case; [3] whether criminal litigation has been finally adjudicated or otherwise settled; [4] the assertion of the prosecutorial authority as to its intent or lack thereof to initiate criminal litigation; [5] whether the prosecutorial authority has taken objective, positive and verifiable steps to preserve its ability to initiate criminal litigation, including, but not limited to, preserving evidence, maintaining contact with witnesses, and continuing an investigation; [6] the time it would take to appropriately investigate and try an offense; [7] the prosecutor's inherent authority to determine whom, when and how he will prosecute, La.C.Cr.P. art. 61; [8] the severity of the crime; [9] the availability of witnesses, victims and defendants; [10] the spoilation of evidence; [11] the reasonable likelihood that a missing witness or an absconded defendant might be found; and [12] the reasonable likelihood that additional witnesses might be willing to come forward with the passage of time. As always, the burden of proving that the record is not subject to inspection, copying, or reproduction by a member of the public rests with the custodian. La. R.S. 44:31(3).

*In re: Matter Under Investigation,* 15 So.3d 972, 991-993. (La. 2009) (brackets inserted);[1] *see Does v. Foti*, 81 So. 3d 101, 109 (La. App. 1st Cir. 2011) (addressing all twelve factors as evaluated by trial judge on remand), *writ denied*, 84 So. 3d 537 (La. 2012).

Here, the information set forth in support of the Motion to Quash, including Young's declaration, is insufficient to address all of the factors outlined above. "Rather, a thoughtful determination must be made following a contradictory hearing wherein there is an opportunity for cross examination and presentation of evidence to contradict a claim of privilege." *In re: Matter Under Investigation*, 15 So.3d at 991-92.

Accordingly, the Court will require Defendant Bergeron to submit additional evidence in support of a finding that the applicable factors are satisfied for the purpose of allowing the WBRSO, under either federal or state law, to withhold documents and information in its possession, custody, and control that otherwise falls within the scope of discovery in this action.

### III. Conclusion

Based on the foregoing,

**IT IS ORDERED** that Sheriff Jeff Bergeron's Motion to Quash (R. Doc. 98) is set for **Oral Argument** and an **Evidentiary Hearing** to be held before the undersigned on **December 11, 2024 at 1:30 p.m. in Courtroom 6.**

Signed in Baton Rouge, Louisiana, on November 6, 2024.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

---

[1] The Louisiana Supreme Court further suggested that the ten-year period provided in La. R.S. 44:3(F) is a legislative recognition that criminal litigation may, in certain situations, be "reasonably anticipated" for up to ten years in cases involving unnatural deaths. *See In re Matter Under Investigation*, 15 So. 3d at 992 ("Because the legislature recognized the great length of time in which criminal litigation can be reasonably anticipated in some cases, it provided a means by which the information contained in the investigative file could be obtained after the passage of ten years by certain members of the public whose right to access the information predominates; namely, the immediately family of the decedent.")November 6, 2024.